STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, as Subrogee of Rodney Luckhart, Plaintiff-Appellee, v. UNIVERSAL UNDERWRITERS GROUP, Defendant-Appellant (Joyce Pontiac GMC, Jeep-Eagle and Toyota, Inc., assumed name of Northern Illinois Auto Center, Defendant).

Second District    No. 2—95—1360

Opinion filed November 7, 1996.—Rehearing denied January 14, 1997.

Kristine A. Karlin, Jay S. Judge, Hans A. Mast, and Kathryn James Anderlik, all of Judge & James, Ltd., of Park Ridge, for appellant.

Vincent Robertelli, of Giagnorio & Robertelli, Ltd., of Bloomingdale and Robert G. Black, of Naperville, for appellee.

JUSTICE HUTCHINSON delivered the opinion of the court:

Plaintiff, State Farm Mutual Automobile Insurance Company (State Farm), as subrogee of Rodney Luckhart, commenced this action by filing a complaint for breach of contract against Joyce Pontiac GMC, Jeep-Eagle, and Toyota, Inc. (Joyce Pontiac GMC), and Universal Underwriters Group (hereinafter defendant or Universal). Plaintiff seeks recovery of $9,092.15 it paid out for claims made against its insured, Rodney Luckhart.

At issue in this insurance coverage dispute is whether *Steinberg v. Universal Underwriters Insurance Co.*, 272 Ill. App. 3d 79 (4th Dist. 1995) (holding that a permissive user with personal insurance coverage in compliance with the minimum limits of the Illinois Vehicle Code (Code) (625 ILCS 5/1—100 *et seq.* (West 1994)) is not "an INSURED" under a car dealer's garage policy), or *Madison Mutual Insurance Co. v. Universal Underwriters Group*, 251 Ill. App. 3d 13 (5th Dist. 1993) (holding that a permissive user with or without personal insurance coverage in compliance with the minimum limits of the Code is "an INSURED" under a car dealer's garage policy), is the better approach in dealing with the issue of whether a test driver/permitted user is "an INSURED" under a car dealer's garage policy.

Plaintiff's complaint alleges the following in a single count. On March 29, 1994, Rodney Luckhart was the test driver of a 1994 Jeep Cherokee owned by Joyce Pontiac GMC. While proceeding eastbound on 75th Street in Naperville, Luckhart rear-ended an automobile owned by Vivian Carter and operated by Raun Calinee. Both parties suffered injuries, and the automobile was damaged. At the time of the accident, Mr. Luckhart was insured by State Farm under a personal auto policy. Joyce Pontiac GMC was insured by Universal. Vivian Carter and Raun Calinee made demands upon State Farm for their claims. State Farm settled the Carter and Calinee claims for $9,092.15.

State Farm, as subrogee of Rodney Luckhart, then brought this breach of contract action alleging Universal had failed and refused to pay, according to its contracted-for policy obligations, the claims arising out of the March 29, 1994, automobile accident. State Farm's complaint alleged Luckhart, its subrogee, was entitled to coverage under the Universal policy. As the operator of a vehicle in Illinois

with the permission of its owner, Luckhart was a person "required by law to be an INSURED" while driving that vehicle. Therefore, Luckhart fit the definition of "an INSURED" within the meaning of that insuring agreement. Relying upon the decision in *Madison Mutual*, the complaint further asserted that the Universal policy afforded primary coverage for the accident.

Relying on *Steinberg*, Universal contended (1) that Rodney Luckhart was not a person "required by law to be an INSURED" under its policy; and (2) that, if Luckhart were "an INSURED," Universal's coverage would be only the amount necessary to provide Luckhart with $20,000-per-person/$40,000-per-accident limits, which Luckhart already possessed from State Farm, and, therefore, Universal owed no coverage to Luckhart.

The trial court granted plaintiff's motion for summary judgment and denied Universal's motion for summary judgment, finding *Madison Mutual* to be older and more persuasive than *Steinberg*. The trial court also determined that the Universal policy is primary, whereas the State Farm policy is excess. Judgment was entered in plaintiff's favor in the amount of $9,092.15. Defendant's motion for reconsideration was denied. This timely appeal follows.

On appeal, defendant argues that the trial court erred in finding for plaintiff and holding that Rodney Luckhart is "an INSURED" under Universal's garage policy definition No. 3 of "WHO IS AN INSURED" and pursuant to the relevant provisions of the Code. We disagree and we affirm.

The relevant portion of Universal's garage policy states:

> "INSURING AGREEMENT—WE will pay all sums the INSURED legally must pay as damages (including punitive damages where insurable by law) because of INJURY to which this insurance applies caused by an OCCURRENCE arising out of GARAGE OPERATIONS or AUTO HAZARD.
>
> * * *
>
> 'AUTO HAZARD' means the ownership, maintenance, or use of any AUTO YOU own or which is in YOUR care, custody or control and:
>
> (1) used for the purpose of GARAGE OPERATIONS or
>
> (2) used principally in GARAGE OPERATIONS with occasional use for other business or non-business purposes or
>
> (3) furnished for the use of any person or organization.
>
> * * *
>
> WHO IS AN INSURED—***
>
> With respect to the AUTO HAZARD:
>
> (1) YOU;
>
> (2) Any of YOUR partners, paid employees, directors, stockhold-

ers, executive officers, a member of their household or a member of YOUR household, while using an AUTO covered by this Coverage Part, or when legally responsible for its use. The actual use of the AUTO must be by YOU or within the scope of YOUR permission;

(3) Any other person or organization required by law to be an INSURED while using an AUTO covered by this Coverage Part within the scope of YOUR permission."

We will begin with a discussion of the relevant statutes and statutory construction.

■ The mandatory insurance provision of the Code states:

"Required liability insurance policy. (a) No person shall operate, register or maintain registration of, and no owner shall permit another person to operate, register or maintain registration of, a motor vehicle designed to be used on a public highway unless the motor vehicle is covered by a liability insurance policy." 625 ILCS 5/7—601(a) (West 1994).

The vehicle dealers provision of the Code states:

"A Certificate of Insurance in a solvent company *** shall be included ***. The policy must provide liability coverage in the minimum amounts of $100,000 for bodily injury to, or death of, any person, $300,000 for bodily injury to, or death of, two or more persons in any one accident, and $50,000 for damage to property." 625 ILCS 5/5—101(b)(6) (West 1994).

■ Section 7—317 of the Code declares a vehicle owner's policy of liability insurance:

"1. Shall designate by explicit description or by appropriate reference, all motor vehicles with respect to which coverage is thereby intended to be granted;

2. Shall insure the person named therein and any other person using or responsible for the use of such motor vehicle or vehicles with the express or implied permission of the insured[.]" 625 ILCS 5/7—317(b)(1), (b)(2) (West 1994).

With regard to statutory construction:

"[T]he cardinal rule *** is to ascertain and give effect to the true intent and meaning of the legislature. [Citation.] In this endeavor, the courts should look first to the statutory language [citation], for the language of the statute is the best indication of the legislature's intent [citation]. Where the meaning of an enactment is unclear from the statutory language itself, the court may look beyond the language employed and consider the purpose behind the law and the evils the law was designed to remedy. [Citation.] Where, however, the language of a statutory provision is clear, the court must give it effect [citation] without resorting to other aids for

construction [citation]." *Solich v. George & Anna Portes Cancer Prevention Center of Chicago, Inc.*, 158 Ill. 2d 76, 81 (1994).

After a careful review of the relevant statutes, we determine that they are silent with regard to the issue in the present case. We agree with the *Madison* court that it is not clear from the plain language of the mandatory insurance provision whether the operator or the owner of the vehicle must provide the mandatory insurance. Nevertheless, it is certain that when Mr. Luckhart was operating the vehicle he was required to be covered by a liability insurance policy. As a result, the issue in terms of our review is limited to the question of whether Mr. Luckhart was an insured under Universal's garage policy at the time of the accident. In other words, we must determine whether Mr. Luckhart was "required by law to be an INSURED" under Universal's garage policy.

■ With respect to insurance policies:

"The construction of an insurance policy's provisions is a question of law. [Citations.] In construing an insurance policy, the court must ascertain the intent of the parties to the contract. [Citations.] To ascertain the meaning of the policy's words and the intent of the parties, the court must construe the policy as a whole [citations], with due regard to the risk undertaken, the subject matter that is insured and the purposes of the entire contract [citation]. If the words in the policy are unambiguous, a court must afford them their *plain, ordinary, and popular meaning*. [Citations.] However, if the words in the policy are susceptible to more than one reasonable interpretation, they are ambiguous [citation] and will be construed in favor of the insured and against the insurer who drafted the policy [citations]." (Emphasis in original.) *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 108-09 (1992).

■ Before beginning our analysis, it is important to understand (1) the applicable standard of review and (2) the public policy considerations relating to auto insurance and insurance generally. With regard to the applicable standard of review, appellate review of a summary judgment ruling is *de novo*. *Outboard Marine Corp.*, 154 Ill. 2d at 102. "Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Outboard Marine Corp.*, 154 Ill. 2d at 102. An appellate court may affirm a summary judgment on any basis found in the record. *Monticello Insurance Co. v. Wil-Freds Construction, Inc.*, 277 Ill. App. 3d 697, 701 (1996).

■ With regard to the public policy considerations, the most important concept to remember is that " 'the purpose of the insurance requirement under the Illinois Motor Vehicle Act is the protec-

tion of the public and not some other insurance company.'" *Insurance Car Rentals, Inc. v. State Farm Mutual Automobile Insurance Co.*, 152 Ill. App. 3d 225, 232 (1987), quoting *Continental Casualty Co. v. Travelers Insurance Co.*, 84 Ill. App. 2d 200, 206 (1967). In addition, "[w]here provisions of an insurance contract are clear and unambiguous and neither illegal nor against public policy, they are to be enforced by the courts." *Equity General Insurance Co. v. Patis*, 119 Ill. App. 3d 232, 236 (1983). Finally, an insurance policy "should not be given a strained, forced, unnatural, or unreasonable construction, or a construction which would *** lead to an absurd conclusion." 45 C.J.S. *Insurance* § 366, at 89 (1993).

We agree with the court in *Madison Mutual*, which stated that "[t]he basic difficulty with Universal's interpretation of its definition of insured is that it equates 'required by law' with someone who is otherwise uninsured, thus *requiring* or *needing* insurance." (Emphasis in original.) *Madison Mutual*, 251 Ill. App. 3d at 16. However, the definition of insured under defendant's policy makes no distinction between whether the person "required by law" to be an insured has insurance coverage under a separate policy. "Whether or not a person is insured under a separate policy when he or she borrows a car from [the car dealer] is of no consequence in determining whether he or she is 'required by law' to have insurance under Universal's definition of insured." *Madison Mutual*, 251 Ill. App. 3d at 16. Had Universal wished to make this distinction, it could have easily included or specifically excluded covered parties. However, Universal did not choose to do this.

Defendant argues that the public policy of Illinois, as expressed in the mandatory insurance provision, does not require that car dealers furnish insurance coverage to customers using their autos. Nevertheless, defendant concedes that, if an uninsured person were to test drive one of its vehicles, the uninsured permitted user would be covered under defendant's garage policy. We see no reason to distinguish between this situation and the present one, in which a permitted user has a personal liability auto insurance policy prior to test driving a vehicle. To do so could lead to unreasonable and possibly absurd results.

We recognize the argument that it is unfair to hold Universal liable when State Farm receives premiums from the test driver. However, by permitting customers to test drive its vehicles, the car dealer receives a vital benefit to the success of its business, *i.e.*, an exponential increase in the probability the permitted user will actually purchase the test-driven vehicle. Considering the statutory authority and the public policy considerations, it is not unreasonable

or manifest error to hold Universal primarily liable for insurance coverage during the time a permitted user test drives a vehicle. Therefore, we hold that a permissive user with or without personal insurance coverage in compliance with the Code is "an INSURED" under Universal's policy.

■ Based on the aforementioned analysis, we reject the reasoning in *Steinberg* which holds that, in the absence of a statute specifically stating that vehicle owners must provide insurance coverage for permissive vehicle users (*i.e.*, the car rental provision of the Code (625 ILCS 5/9—105 (West 1994)); taxicab owners provisions of the Code (625 ILCS 5/8—108, 8—109 (West 1994))), there is no requirement car dealers provide insurance coverage for customers or permitted users. *Steinberg*, 272 Ill. App. 3d at 82. In other words, the *Steinberg* majority held that a permissive user with personal insurance coverage in compliance with the Code is not "required by law to be an INSURED" under Universal's policy and, therefore, is not "an INSURED" under Universal's policy. Once again, to draw such a fine, artificial line could lead to unreasonable and possibly absurd results that would weaken the purpose of the insurance requirement under the Code. Furthermore, in light of the public policy considerations identified, we do not find defendant's references to the Kentucky, Missouri, and Montana statutes and case law applicable or relevant to the present case.

Each party has also argued that the language of its policy concerning the amount to be paid defines its obligation as excess coverage. Defendant presents this argument as an alternative to its statutory construction and policy intention arguments. In other words, if this court determines that Luckhart is "an INSURED," defendant argues that he still would not be entitled to coverage from Universal because Universal is only required to provide excess coverage. Plaintiff responds that its policy also only requires excess coverage, and, because the language of Universal's policy is illusory and without meaning, this court should disregard defendant's claim.

We acknowledge that when interpreting an insurance policy our responsibility is to "ascertain and enforce the intention of the parties as expressed in the agreement." *Springfield Fire & Casualty Co. v. Garner*, 255 Ill. App. 3d 685, 695 (1993). Furthermore, we are not to be guided by the private or self-serving intent of the parties; instead, we must look to the intent of the parties as expressed in the agreement. *Guaranty National Insurance Co. v. Koch*, 242 Ill. App. 3d 692, 696-97 (1993). However, when that express intention is inconsistent with or in violation of public policy considerations, a court may not be able to enforce strictly the expressed intention of the parties. *Guaranty National Insurance Co.*, 242 Ill. App. 3d at 695.

Here, we have already resolved the statutory construction argument against defendant, and that portion of this order is dispositive of this issue. In coming to the conclusion that defendant's policy shall be used to reimburse plaintiff, we have also applied public policy considerations and determined that to accept defendant's statutory construction argument would be to weaken the purpose of the mandatory insurance requirements. While we do not necessarily agree with plaintiff that defendant's policy coverage language is illusory and without meaning, we do determine that to accept the expressed intention of the parties to this insurance agreement would be inconsistent with the public policy of the State of Illinois and could ultimately lead to an unreasonable and absurd result.

The facts of this case do not mandate that we address the ultimate excess coverage issue. Here, the amount sought is $9,092.15. This amount is considerably below the $20,000/$40,000 coverage requirement of the mandatory insurance provision (625 ILCS 5/7—601(a) (West 1994)) and significantly below the $100,000/$300,000 coverage requirement of the vehicle dealers provision (625 ILCS 5/5—101(b)(6) (West 1994)). Furthermore, to address this issue here, without allowing an adequate opportunity for briefing and argument, would be unfair.

For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

GEIGER and RATHJE, JJ., concur.