SECOND DIVISION
 MARCH 4, 1997









No. 1-96-1085

UNIVERSAL UNDERWRITERS INSURANCE GROUP, ) Appeal from the
 ) Circuit Court of
 Plaintiff-Appellant, ) Cook County
 )
 )
 v. )
 )
 ) 
IRENE GRIFFIN, ALLSTATE INSURANCE )
COMPANY, DOROTHY LUBOW, and )
HOWARD PONTIAC, INC., ) The Honorable 
 ) John K. Madden, 
 Defendants-Appellees. ) Judge
Presiding
 PRESIDING JUSTICE DiVITO delivered the opinion of the
court: 
 In July 1991, Howard Pontiac, Inc. (Howard), allowed its
customer Irene Griffin to use a "loaner" car while it serviced her
car. While she was driving the loaner, Griffin was involved in an
accident. At the time, plaintiff Universal Underwriters Insurance
Group (Universal) insured Howard under a garage policy, and
Allstate Insurance Company (Allstate) insured Griffin under a
personal auto policy.
 One of the other drivers involved in the accident, Dorothy
Lubow, sued Griffin for negligence. Allstate initially defended
Griffin in that suit but later tendered the defense to Universal,
which then filed a complaint for declaratory judgment against
defendants Allstate, Griffin, Lubow, and Howard. Allstate filed a
counterclaim for declaratory judgment against Universal. Universal
and Allstate filed cross-motions for summary judgment.
 After a hearing, the circuit court held that Griffin was an
insured under the Universal policy and that the limits of
Universal's coverage for Griffin were $100,000 per person and
$300,000 per accident, and it ordered Allstate and Universal to
share liability on a pro rata basis. Universal appeals that
decision.
 To resolve the issues presented by this appeal, we must decide
whether Griffin was an insured under Universal's policy. If we
find that she was an insured, we must decide which insurer,
Allstate or Universal, is responsible for coverage, and we must
determine the amount of that coverage.
 In its amended complaint for declaratory judgment, Universal
asked for a declaration that it owed Griffin neither coverage nor
a defense because (1) she was not an insured under its policy, (2)
if she were an insured, Universal's coverage was excess over
Allstate's, and (3) if there were coverage, the limits of that
coverage were $20,000 per person and $40,000 per accident.
 There is no amended counterclaim in the record, but Allstate's
original counterclaim contained three counts. In count I, Allstate
asserted that Griffin was an insured under the Universal policy and
asked for a declaration that Universal reimburse Allstate for the
fees and costs it incurred in defending her. In count II, Allstate
asked the circuit court to declare that the limits of Universal's
coverage with respect to Griffin were $100,000 per person and
$300,000 per accident. In count III, Allstate asked for a declara-
tion that its policy and Universal's policy were co-excess policies
and, therefore, that Universal must pay Allstate its proportionate
share of Griffin's defense.
 Allstate filed a motion for summary judgment on its counter-
claim and on Universal's complaint. It asked the circuit court to
enter judgment that Griffin was an insured under Universal's
policy, that the limits of Universal's coverage were
$100,000/$300,000, and that Universal reimburse Allstate on a pro
rata basis for its expenses in defending Griffin.
 Universal responded with its own motion for summary judgment. 
It asked the circuit court to find that Griffin was not an insured
under its policy and that it owed Griffin no coverage or defense. 
Alternatively, it asked the court to declare that its coverage was
excess or that the limits of its coverage were $20,000/$40,000.
 After a hearing, the circuit court entered a written order in
which it essentially granted Allstate's motion and denied Univer-
sal's. It stated that both Universal and Allstate were excess
insurers of Griffin. The "other insurance" clauses in the
Universal and Allstate policies were incompatible, and, therefore,
Universal and Allstate were to contribute to Griffin's defense on
a pro rata basis. The court further found that Universal's
liability was equal to its policy limit of $100,000/$300,000, and
Allstate's liability was equivalent to its policy limits.
 The court concluded:
 "From a public policy standpoint, Allstate and
 Universal are responsible for coverage. Illinois
 automobile insurance law is mandated to protect the
 general public in instances where members of the general
 public may be injured in an automobile accident. The
 general public should be compensated for any injuries
 suffered. The insurance companies collect premiums from
 their customers and enjoy the monetary benefits of these
 premiums. The companies should adhere to their responsi-
 bility to protect the general public by living up to
 their full obligations under those policies."
 On appeal, Universal first disputes the circuit court's
conclusion that Griffin was an insured under its policy. The
policy provided that Universal would pay "all sums the INSURED
legally must pay as damages *** because of INJURY to which this
insurance applies caused by an OCCURRENCE arising out of GARAGE
OPERATIONS or AUTO HAZARD." The policy defined "auto hazard" as
"the ownership, maintenance, or use of any AUTO YOU own *** and: 
*** (3) furnished for the use of any person or organization."
 The parties' dispute concerning Griffin's status as an insured
focuses on the policy's definition of an insured:
 "WHO IS AN INSURED -- ***
 With respect to the AUTO HAZARD:
 1. YOU;
 2. Any of YOUR partners, paid employees, directors,
 stockholders, executive officers, a member of their
 household or a member of YOUR household, while using an
 AUTO covered by this Coverage Part, or when legally
 responsible for its use. The actual use of the AUTO must
 be by YOU or within the scope of YOUR permission;
 3. Any other person or organization required by law
 to be an INSURED while using an AUTO covered by this
 Coverage Part within the scope of YOUR permission."
The parties agree that Griffin does not fall within the first two
parts of this definition, and Universal does not dispute that she
was acting within the scope of Howard's permission when she had the
accident. Their disagreement centers on whether Griffin was
"required by law to be an INSURED."
 According to Universal, Griffin was not "required by law to be
an INSURED" because Illinois law does not require auto owners to
provide insurance coverage to permissive users of their cars. 
Universal acknowledges that the Illinois Vehicle Code contains the
following mandatory insurance provision: 
 "Required liability insurance policy. (a) From
 January 1, 1990 through December 31, 1993, no person
 shall operate, register or maintain registration of, and
 no owner shall permit another person to operate, register
 or maintain registration of, a motor vehicle designed to
 be used on a public highway unless the motor vehicle is
 covered by a liability insurance policy.
 The insurance policy shall be issued in amounts no
 less than the minimum amounts set for bodily injury or
 death and for destruction of property under Section 7-203
 of this Code ***." 625 ILCS 5/7-601(a)(West 1992).
Universal contends that, although this provision requires car
owners and operators to maintain insurance coverage, it does not
require owners to provide insurance coverage for operators of their
cars.
 Universal argues that Griffin also was not "required by law to
be an INSURED" under section 5-101(b)(6) of the Vehicle Code (625
ILCS 5/5-101(b)(6) (West 1992)), which governs the type of
insurance car dealers must maintain, because this section does not
require new car dealers to provide coverage for permissive users. 
Section 5-101(b)(6) states:
 "A Certificate of Insurance in a solvent company autho-
 rized to do business in the State of Illinois shall be
 included with each application covering each location at
 which he proposes to act as a new vehicle dealer. The
 policy must provide liability coverage in the minimum
 amounts of $100,000 for bodily injury to, or death of,
 any person, $300,000 for bodily injury to, or death of,
 two or more persons in any one accident, and $50,000 for
 damage to property." 625 ILCS 5/5-101(b)(6) (West 1992).
 According to Universal, if the legislature had intended to
require owners or car dealers to provide insurance for permissive
users of their cars, it could have done so. In support of its
argument, Universal notes that, in section 9-105 of the Vehicle
Code, the legislature expressly requires owners of rented motor
vehicles to provide insurance for the operator of a rented vehicle
against liability. See 625 ILCS 5/9-105 (West 1992). Similarly,
in section 8-108 of the Vehicle Code, the legislature expressly
requires the owners of motor vehicles engaged in the transportation
of passengers to provide insurance for operators of those vehicles
against liability. See 625 ILCS 5/8-108 (West 1992). Universal
contends that, by omitting similar express requirements from the
mandatory insurance provisions contained in section 7-601 and
section 5-101(b)(6) of the Vehicle Code, the legislature clearly
did not intend to require owners or new car dealers to insure their
permissive users.
 Universal urges us to compare the Illinois insurance require-
ments to those in Kentucky, Missouri, and Montana. According to
Universal, permissive users in those states are insureds under its
garage policy because state statutes expressly require auto owners
or car dealers to provide insurance coverage for permissive users. 
See Universal Underwriters Insurance Co. v. Veljkovic, 613 S.W.2d
426 (Ky. App. 1980); George Walsh Chevrolet, Inc. v. Dieteres, 864
S.W.2d 934 (Mo. App. 1993); Bill Atkin Volkswagen, Inc. v.
McClafferty, 213 Mont. 99, 689 P.2d 1237 (1984). Universal argues
that, because Illinois does not have a similar statute requiring
that car owners or dealers provide insurance coverage for permis-
sive users, permissive users in Illinois are not insureds under its
policy.
 Allstate responds that Griffin was "required by law to be an
INSURED" because section 7-601 requires all vehicle operators to
have insurance and prohibits all vehicle owners, such as Howard,
from lending vehicles unless the operator has insurance. In the
alternative, it argues that Universal's definition of an insured is
ambiguous and must be construed against Universal, as the insurer. 
 At the heart of the parties' arguments is their discussion of
two conflicting appellate court decisions involving the same
Universal policy definition at issue in this case. Universal
relies on Steinberg v. Universal Underwriters Insurance Co., 272
Ill. App. 3d 79, 650 N.E.2d 14 (4th Dist. 1995), appeal denied, 163
Ill. 2d 589, 657 N.E.2d 639 (1995) (Steinberg), in which the court
held that only underinsured or uninsured permissive users of a car
owned by a car dealer are "required by law" to be insured and,
therefore, only these users are insureds under Universal's garage
policy. Allstate relies on Madison Mutual Insurance Co. v.
Universal Underwriters Group, 251 Ill. App. 3d 13, 621 N.E.2d 270
(5th Dist. 1993), appeal denied, 154 Ill. 2d 561, 631 N.E.2d 710
(1994) (Madison Mutual), in which the court held that a permissive
user of a car owned by a car dealer is "required by law to be an
INSURED" because section 7-601 of the Vehicle Code (625 ILCS 5/7-
601 (West 1992)) requires all vehicle operators to have liability
insurance.
 In November 1996, the second district issued an opinion in
which it decided that a permissive user of a car dealer's car was
an insured under a Universal garage policy that was like the one at
issue in this case. See State Farm Mutual Automobile Insurance Co.
v. Universal Underwriter's Group, 285 Ill. App. 3d 115 (1996)
(State Farm). In this decision, the second district followed the
fifth district decision in Madison Mutual. The second and fifth
districts agree that, under section 7-601 of the Vehicle Code, a
permissive user of a car dealer's car is an insured under the
Universal garage policy. As these two decisions present the
majority and, in our view, the better-reasoned approach, we follow
them rather than the conflicting decision in Steinberg.
 In Madison Mutual, the court held that the driver of a loaner
car was an insured under a garage policy Universal had issued the
dealer. The driver, Jason Dorris, was involved in a car accident
while driving the loaner car. There was no dispute that Dorris was
insured under his father's policy with Madison Mutual Insurance
Company. The critical issue was whether he was an insured under
the Universal policy definition. See Madison Mutual, 251 Ill. App.
3d at 14-15.
 The Madison Mutual court stated that it was not clear from
section 7-601 of the Vehicle Code whether an owner or an operator
is responsible for the mandatory insurance that provision requires. 
The court found it unnecessary to resolve this issue, however,
because it decided that, in either case, section 7-601 required
Dorris to be covered by liability insurance when he was operating
the loaner car. Consequently, the court decided that he was
"required by law to be an INSURED." Madison Mutual, 251 Ill. App.
3d at 15-16.
 The court rejected Universal's argument that Dorris was not an
insured under its policy because he had coverage through Madison
Mutual Insurance Company. The court explained that Universal
improperly equated the terms "required by law" with the words
"requiring or needing insurance" (emphasis in original). Madison
Mutual, 251 Ill. App. 3d at 16. The court stated that, under the
Universal policy, the existence of coverage under a separate policy
is of no consequence to the determination of whether that person is
"required by law to be an INSURED." Madison Mutual, 251 Ill. App.
3d at 16.
 In Steinberg, by contrast, the court held that Timothy Massey,
an individual who was involved in a car accident while test-driving
a vehicle owned by a car dealer, was not an insured under the
dealer's garage policy with Universal. Steinberg, 272 Ill. App. 3d
at 80-81. At the time of the accident, Massey was covered by his
mother's personal automobile policy with State Farm. As in this
case, the question in Steinberg was whether Massey was an insured
according to the Universal policy definition.
 The Steinberg court found that Massey was not "required by law
to be an INSURED" because Illinois has no statute that requires a
car dealer to provide insurance coverage to customers or permissive
users. The court noted that, in Illinois statutes that require
insurance for rental car and taxicab owners, the legislature had
expressly mandated that these owners provide insurance coverage for
permissive users. Steinberg, 272 Ill. App. 3d at 82.
 The Steinberg court disagreed with the Madison Mutual holding. 
It decided that the Universal policy was intended to cover only
uninsured and underinsured customers because only these permissive
users are "required by law to be" insureds. According to the
court, because Massey had the statutorily required minimum
insurance coverage with State Farm, he was not "required by law to
be an INSURED" under the Universal policy. Steinberg, 272 Ill.
App. 3d at 83.
 Justice Cook dissented from the majority decision in
Steinberg. He agreed instead with the Madison Mutual decision:
 "Because [the dealer] was required to have insurance
 under the mandatory insurance law, and because [the
 dealer] was prohibited from permitting Massey to use its
 vehicle unless the vehicle was covered by a liability
 insurance policy, I would hold that Massey was 'required
 by law to be an INSURED,' despite the fact that other
 coverage was available to Massey." Steinberg, 272 Ill.
 App. 3d at 85 (Cook, J., dissenting).
 Like the court in Madison Mutual, the second district held in
State Farm, that the test-driver of a car owned by a car dealer was
an insured under the Universal garage policy issued to the dealer. 
While test-driving the car, Rodney Luckhart was involved in an
accident. He was an insured under a personal auto policy with
State Farm. Again, the issue was whether Luckhart was also an
insured under the Universal garage policy. State Farm, 285 Ill.
App. 3d at 117-18. 
 The State Farm court acknowledged the conflict between Madison
Mutual and Steinberg and decided that Madison Mutual was the better
decision. Like the Madison Mutual court, it concluded that
Luckhart was "required by law to be an INSURED" because, when he
was test-driving the dealer's vehicle, Illinois law required him to
be covered by liability insurance. The State Farm court also
agreed with the Madison Mutual court's conclusion that Universal's
interpretation of its policy improperly equated the words "required
by law" with the terms "requiring or needing insurance." The court
noted that, had Universal wished to limit its coverage to those
permissive users without adequate insurance, it could have made
this distinction. State Farm, 285 Ill. App. 3d at 120, 121.
 The State Farm court rejected the Steinberg court's interpre-
tation of the policy because it believed that the "fine, artificial
line" this court drew could "lead to unreasonable and possibly
absurd results that would weaken the purpose of the insurance
requirement under the [Vehicle] Code." State Farm, 285 Ill. App.
3d at 122.
 The State Farm court also supported its decision with public
policy reasons. It stated that the purpose of the mandatory
insurance requirements was to protect the public and not to protect
another insurance company. It concluded that it was not unreason-
able to hold Universal primarily liable for insurance coverage
during a test-drive because, although Universal receives no
premiums from the test-driver, the car dealer benefits from the
test-drive by increasing the chance of a purchase. Although
Illinois law does not require car dealers to furnish insurance
coverage to customers using their autos, to distinguish between
customers with insurance and those without would lead to unreason-
able and absurd results under Universal's garage policy. State
Farm, 285 Ill. App. 3d at 120-22.
 Based on Madison Mutual and State Farm, we conclude that
Griffin was an insured according to the definition in the Universal
policy. Courts should not distort the meaning of words in a policy
to reach a desired result, and they should not search for or create
ambiguities where there are none but should interpret the policy as
a whole and according to the plain, ordinary, and popular meaning
of its language. International Minerals & Chemical Corp. v.
Liberty Mutual Insurance Co., 168 Ill. App. 3d 361, 371, 522 N.E.2d
758 (1988). 
 In Madison Mutual and State Farm, the courts adhered to this
rule of construction by enforcing the language "required by law to
be an INSURED" according to its plain and ordinary meaning. The
flaw in Universal's argument is that it interprets this language as
if it reads "required by law to be an INSURED under the dealer's
policy." The plain language of the policy definition, however,
does not specify that the permissive user be required by law to be
an insured under the dealer's policy. Consequently, a permissive
user is an insured under the Universal policy if the user is
required by law to be an insured under any policy. Because
Illinois law requires permissive users to have insurance, permis-
sive users are "required by law to be an INSURED" and are,
therefore, insureds under the Universal policy. 
 Universal could have drafted its definition of an insured such
that, to fall within this definition, permissive users must be
required by law to be insured's under the Universal policy. 
Universal, however, did not limit its policy definition in this
manner. As a result, the fact that Illinois law does not require
owners or dealers to provide insurance for permissive users is
irrelevant. As the Madison Mutual and State Farm courts correctly
concluded, the definition includes permissive users who are
required by law to be an insured under any policy, and Illinois has
such a requirement in section 7-601 of the Vehicle Code. 
 Like Universal's interpretation of the policy, the Steinberg
court's interpretation is at variance with the plain language of
the policy. The Steinberg court concluded that permissive users
with their own insurance are not insureds under the Universal
policy. The policy definition of an insured, however, does not
distinguish between permissive users with their own insurance and
those without their own insurance. Contrary to the Steinberg
court's conclusion, the words "required by law to be an INSURED" do
not contain such a distinction. Regardless of whether permissive
users have their own insurance, under section 7-601 they are
"required by law to be an INSURED." Whether they have their own
insurance merely demonstrates whether they have met this require-
ment. For these reasons, we choose not to follow Steinberg. 
Instead, we follow the Madison Mutual and State Farm decisions
because these decisions are consistent with the plain language of
the policy. Based on the reasoning in these cases, we hold that
Griffin was an insured under Universal's policy.
 Allstate argues that we may also find that Griffin was an
insured under the Universal policy if we find that Universal's
policy definition is ambiguous. Allstate relies on the rule that
ambiguities in a policy will be construed against the insurer and
in favor of the insured. See National Discount Shoes, Inc. v.
Royal Globe Insurance Co., 99 Ill. App. 3d 54, 60, 424 N.E.2d 1166
(1981). 
 A court will not search for an ambiguity, however, where none
exists (Crum & Forster Managers Corp. v. Resolution Trust Corp.,
156 Ill. 2d 384, 391, 620 N.E.2d 1073 (1993)), and a policy term is
not ambiguous merely because the parties can suggest creative
possibilities for its meaning (Lapham-Hickey Steel Corp. v.
Protection Mutual Insurance Co., 166 Ill. 2d 520, 529, 655 N.E.2d
842 (1995)). Despite the parties' differing interpretations of the
policy, we believe that the Universal policy definition of an
insured is not ambiguous. As we have explained, the plain language
of this definition provides coverage in states with statutes
requiring permissive users to be "an INSURED," that is, to be
insured.
 Allstate asserts that a Pennsylvania court in another
jurisdiction has held that the Universal definition of an insured
is ambiguous. See State Farm Mutual Automobile Insurance Co. v.
Universal Underwriters Insurance Co., 441 Pa. Super. 446, 456, 657
A.2d 1252, 1257 (1995), appeal granted, ___ Pa. ___, 674 A.2d 1075
(1996). The court in the Pennsylvania State Farm case construed
the ambiguity it found against Universal and, therefore, held that
the permissive user of the dealer's car was an insured under the
dealer's policy with Universal. State Farm, 441 Pa. Super. at 457,
657 A.2d at 1257. 
 The Pennsylvania case does not support a conclusion in this
case that the policy definition is ambiguous. First, we note that
the Pennsylvania Supreme Court has granted an appeal in that case. 
Also, although the policy language in that case is the same as the
language in this case, the state mandatory insurance law is
different. The Pennsylvania court's finding that the definition
was ambiguous was based on the fact that the court could not
determine by reference to Pennsylvania law who was "required by law
to be an INSURED." Unlike Pennsylvania law, Illinois law permits
us to determine who was "required by law to be an INSURED," and we
do not believe that the policy definition was ambiguous in this
case. Moreover, we find it significant that, in Madison Mutual,
Steinberg, and State Farm, Illinois courts have found no ambiguity
in the policy definition. 
 In addition to challenging the circuit court's conclusion that
Griffin was an insured under its policy, Universal contends that
the circuit court erred in finding that it must contribute to her
coverage on a pro rata basis and that the limits of its policy were
$100,000/$300,000. Universal relies on the following "other insur-
ance" provision in its policy:
 "OTHER INSURANCE -- The insurance afforded by this
 Coverage Part is primary, except it is excess:
 ***
 (2) for any person or organization who becomes an
 INSURED under this Coverage Part as required by law."
Universal also relies on another policy provision that limits its
liability in the event there is other insurance: 
 "THE MOST WE WILL PAY -- *** [T]he most WE will pay
 is:
 1. *** 
 With respect to persons or organizations required by
 law to be an INSURED, the most WE will pay is that
 portion of such limit needed to comply with the minimum
 limits provision of such law in the jurisdiction where
 the OCCURRENCE took place. When there is other insurance
 applicable, WE will pay only the amount needed to comply
 with such minimum limits after such other insurance has
 been exhausted."
 Universal argues that, under these provisions, it owes Griffin
no coverage. It claims that the limits of its coverage are
$20,000/$40,000 because these are the minimum limits section 7-601
requires. See 625 ILCS 5/7-601, 7-203 (West 1992). According to
Universal, section 7-601 rather than section 5-501(b)(6) provides
the limits of its coverage because the former is the section under
which Griffin is a person "required by law to be an INSURED."
 Given the $20,000/$40,000 limits, Universal argues that it
owes Griffin no coverage because its policy requires it to provide
coverage only when other insurance is insufficient to provide the
$20,000/$40,000 minimum coverage, and the limits of the Allstate
policy were greater than $20,000/$40,000. Universal acknowledges
that Allstate also has an excess insurance clause, but it argues
that its policy does not apply in this case because its policy
limits do not exceed Allstate's policy limits.
 Allstate responds that Universal's "other insurance" clauses
conflict with the following "excess clause" in the Allstate policy:
 "If a person insured is using a substitute private
 passenger auto or a non-owned auto, our liability
 insurance will be excess over other collectible insur-
 ance. If more than one policy applies to an accident
 involving your insured auto, we will bear our proportion-
 ate share with other collectible liability insurance." 
 (Bold in original.)
According to Allstate, the "other insurance" clauses in the
Universal policy constitute an "escape clause," and courts have
refused to enforce escape clauses in car owner's policies when the
clauses conflict with an excess clause in the driver's policy. In
these cases, the courts have held that the owner's insurer is
primarily liable. See, e.g., New Amsterdam Casualty Co. v. Certain
Underwriters at Lloyds, London, 34 Ill. 2d 424, 428-29, 216 N.E.2d
665 (1966).
 Alternatively, Allstate asks us to affirm the circuit court's
pro rata assignment of liability. Allstate argues that, when two
applicable insurance policies have conflicting excess clauses, the
clauses negate each other, and courts require the insurers to
contribute to liability on a pro rata basis. These cases support
the circuit court's ruling in this case. Allstate also supports
the circuit court's holding that the limits of Universal's coverage
for Griffin are $100,000/$300,000. According to Allstate, these
should be the limits of Griffin's coverage because they are the
minimum limits for the coverage Illinois requires new car dealers
to maintain.
 In determining which insurer in this case is responsible for
coverage and in what amount, the decisions in Madison Mutual,
Steinberg, and State Farm offer little guidance. In Madison
Mutual, the court affirmed the circuit court's decision that the
Universal policy provided primary coverage. It did not discuss
this issue, however, and the opinion does not indicate that
Universal argued that its coverage was not primary. Universal did
argue that the limits of its coverage should be the amount required
in the Illinois Vehicle Code, but the court refused to address this
issue because the circuit court had not decided it. Madison
Mutual, 251 Ill. App. 3d at 17.
 The Steinberg court's discussion of Universal's responsibility
for coverage and its policy limits is of limited value because it
is dicta. After holding that Massey was not an insured under the
Universal policy, the Steinberg court commented that, had it found
coverage under the Universal policy, it would have found that the
limits of this coverage were $20,000/$40,000 pursuant to section 7-
601, not $100,000/$300,000 as the circuit court had found. The
court further stated that it disagreed with the Madison Mutual
court's view that Universal should be the primary insurer of
permissive users. The Steinberg court said that Illinois law and
the Universal policy do not require this. Steinberg, 272 Ill. App.
3d at 83-84. 
 In his dissent, Justice Cook agreed that Universal's policy
limits should be $20,000/$40,000. He disagreed