SIXTH DIVISION
February 2, 2007

No. 1-04-3879

JAMES W. JENSEN,                        )       Appeal from the
                                        )       Circuit Court
      Plaintiff-Appellant,              )       of Cook County.
                                        )
                                        )
                                        )
                                        )
v.                                      )       No. 01 CH 13319
                                        )
                                        )
BAYER AG, a German corporation,         )       Honorable
(BAYER CORPORATION, an Indiana          )       David R. Donnersberger,
Corporation, Defendant Appellee)        )       Judge Presiding.


      JUSTICE O'MALLEY delivered the opinion of the court:

      Plaintiff, James Jensen, purchased and used Baycol, which

his doctor prescribed to him to lower his cholesterol.

Thereafter, defendant Bayer Corporation, manufacturer of Baycol,

discontinued the marketing and distribution of Baycol.[1]  The

plaintiff then brought an action against defendant on behalf of

himself and later filed an amended motion for class

certification.  Plaintiff, in his motion for class certification,

asserted claims sounding in consumer fraud, breach of implied

warranty, and medical monitoring, regarding the manufacturing,

marketing and sale of Baycol.  The trial court denied plaintiff's

motion for class certification, granted defendant's motion for

_____

      [1]Defendant Bayer AG is not a party to this appeal.

No. 1-04-3879

summary judgment on plaintiff's individual claims, and denied plaintiff's motion for reconsideration for the same.  For the reasons that follow, we affirm.

I.  Factual Background

On August 8, 2001, defendant issued a statement announcing the removal of Baycol from the market, which stated, in relevant part, the following:

"Rhabdomyolysis is a serious, potentially fatal, adverse effect of all statin drugs, including Baycol.  They can occur with statin monotherapy, although the risk appears to be increased significantly by concomitant use of gemfibrozil (Lopid).

Our ongoing scrutiny of post marketing reports of rhabdomyolysis, including fatalities, has revealed an increased reporting rate of rhabdomyolysis with Baycol relative to other statins, especially when gemfibrozil is co-prescribed.  These data also suggest an increased reporting rate of rhabdomyolysis at the 0.8 mg dose of Baycol alone.

***

**Effective immediately, Bayer has discontinued the marketing and distribution of all dosage strengths of Baycol.  Patients who are currently taking Baycol**

-2-

No. 1-04-3879

     **should have their Baycol discontinued and be switched**

     **to an alternative therapy.**"  (Emphasis in original.)

     Plaintiff, who consumed Baycol to lower his cholesterol, filed a complaint on behalf of himself against defendants on August 15, 2001.  Thereafter, plaintiff filed an amended motion for class certification.  Plaintiff alleged, *inter alia*, that: (1) defendant violated section 2 of the Consumer Fraud and Deceptive Practices Act (Act)(815 ILCS 505/2 (West 2002)) by "misrepresenting, concealing and/or omitting" information concerning the adverse health effects of Baycol; (2) defendant breached an implied warranty to plaintiff that Baycol was fit for its ordinary purpose, "that being to provide safe and effective treatment for high cholesterol"; and (3) defendant's product subjected plaintiff to unnecessary future health risks such as rhabdomyolysis and that such health risks required medical monitoring.

     On August 29, 2003, plaintiff gave his deposition testimony. Plaintiff stated that after he suffered a heart attack, his doctor prescribed Baycol to plaintiff to lower his cholesterol. He took this medication between May 2000 and August 2001. Plaintiff stated that he cannot recall if he read any literature concerning Baycol.  He never read any articles about Baycol, either on the Internet or in any newspapers.  Nor did he read the

labeling or package insert for Baycol. Plaintiff testified that he did not rely on any documents when making his decision to take Baycol. Rather, he just "trusted his doctor."

Plaintiff stated that at the time he took Baycol, he worked as a mechanic in "hanger maintenance." In this position, plaintiff often climbed ladders, lifted items, and "maintained" his building. Plaintiff stated that he did not seek compensation for lost wages. He stated that the pain he suffered from Baycol may have caused him to be less productive at work, but it did not cause him to miss work. Specifically, plaintiff stated that he suffered pain in his "calves and legs." This pain went away, according to plaintiff, when his doctor switched his prescription to Zocor and defendant simultaneously stopped taking Baycol. Plaintiff testified that his wife, not his doctor, told him to stop taking Baycol. He further testified that no doctors ever informed him that his leg pains were caused by Baycol. He stated that he never asked a doctor whether his leg pains were caused by Baycol because he "drew this conclusion himself." Plaintiff also never asked his doctor why Baycol had been withdrawn from the market. Plaintiff further testified that he is not aware of any increased risk to his future health from his prior use of Baycol, and that he has not asked his doctors about this matter. He also testified that he has no reason to believe that his future health

No. 1-04-3879

is at risk from his consumption of Baycol.

Only two deposition testimonies from medical professionals appear in the record, Dr. Robert Duncan and Dr. Jogi Nareddy. These two physicians, called by defendant, treated plaintiff after he sustained a heart attack. Dr. Duncan stated that plaintiff informed him at plaintiff's initial visit that, because of a prior heart attack, plaintiff was taking a regimen of aspirin, Altace, and Zocor. Dr. Duncan further stated that one of the side effects of Zocor is an increased risk of rhabdomyolysis, which, according to Dr. Duncan, is a "breakdown of muscle, releasing myoglobin into the bloodstream in its most severe cases." He further stated that: "Myoglobin is toxic to certain organs, in particular the kidneys. In severe cases of rhabdomyolysis, you can undergo renal failure, [and] require dialysis. In less severe cases, you may have myalgia or muscle aches associated with it." Dr. Duncan further stated that Zocor was a member of the statin class of drugs. All statin drugs carry the risk of rhabdomyolysis according to Dr. Duncan. He nevertheless prescribes statin drugs because, in his view, "[t]he benefits of lowering cholesterol way outweigh the risks of a very, very rare event taking place, which would be rhabdomyolysis or other aches and pains, which people can normally tolerate." Dr. Duncan stated that though he was not aware that plaintiff

-5-

formerly took Baycol while under another physician's care, this fact did not alter or change the way he treated plaintiff. He stated that Baycol was a member of the statin class of drugs, which many of his patients were on prior to its removal from the market. He stated that he would have prescribed a nonstatin drug to plaintiff if his liver function tests were not within normal range. This was not the case, however. Dr. Duncan also stated that myopathy and rhabdomyolysis are risks that are manifested when a patient takes medication from the statin class. These conditions, however, go away when treatment is discontinued, according to Dr. Duncan.

Dr Nareddy testified that Dr. Duncan referred plaintiff to him for a "cardiac follow-up." Dr. Nareddy stated that Dr. Duncan is a board-certified internist. Dr. Nareddy stated that he is a board-certified internist as well as a board-certified cardiologist. Dr. Nareddy reiterated that all statins carry the risk of myopathy and rhabdomyolysis and that despite these risks, he prescribes "a lot of them." Dr. Nareddy stated that he had determined from plaintiff's old medical records that he had previously had a heart attack. In addition, the records indicated that plaintiff was on Baycol and had been "switched" to Zocol. This fact, however, did not alter Dr. Nareddy's treatment of plaintiff. Nor did it necessitate any sort of "special

testing or monitoring" of plaintiff. Dr. Nareddy stated that he performed liver tests on plaintiff because of his Zocor treatment. These tests, however, were not performed because of his prior Baycol treatment. Dr. Nareddy further testified that plaintiff never complained to him of any side-effects from his prior use of Baycol, particularly leg pains.

On December 15, 2003, the trial court entered a written order denying plaintiff's motion for class certification. In so doing, the court reasoned that common questions of law and fact did not predominate over individual issues. For instance, in regard to the class action for consumer fraud, the court noted that the state statutes for class actions for consumer fraud have vastly different requirements for the elements of proof, *i.e.*, "the burden of persuasion required to prove *scienter* differs from state to state." Furthermore, the notice requirements for a breach of warranty claim also differed significantly from state to state, according to the trial court's order. In regard to the class action claim for medical monitoring, the court concluded that the development of medical monitoring was too "embryonic" for any commonality to be found.

The court also found no factual commonality. For instance, the consumer fraud count, according to the court, would involve individual factual questions regarding reliance on defendant's

alleged concealment of Baycol's safety.  In regard to the medical monitoring claim, the court stated that "[e]ach class members' individual medical condition would have to be monitored based on that class members' prior medical condition."  In regard to the breach of implied warranty claims, the court noted that "the question whether Baycol lowered a class member's cholesterol or harmed him would be a question individual to each class member."

On January 7, 2004, defendant filed a motion for summary judgment concerning plaintiff's individual claims, which the trial court granted as well.  In granting defendant's motion, the court reasoned that plaintiff's implied warranty claim lacked merit because plaintiff failed to prove that he had privity with defendant and that he provided actual notice of breach to defendant.  Concerning plaintiff's medical monitoring claim, the court stated: "As there is no evidence that [plaintiff] is in need of future medical monitoring due to his past use of Baycol, Bayer is entitled to summary judgement ***.  [Plaintiff's] speculation does not constitute evidence."  Regarding plaintiff's consumer fraud claim, the court stated that defendant was entitled to summary judgment because plaintiff failed to demonstrate that he was actually deceived by any deceptive practice by defendant.

Plaintiff then filed a motion for reconsideration of the

trial court's dismissal of plaintiff's individual claims, which the trial court stayed on September 14, 2004. In the hearing attendant to the order the court remarked:

"Plaintiff argues that [the trial court] denied certification of a nationwide class and that a class of Illinois residents could still be named.

However, plaintiff has not presented anything to this Court showing that the certification of such a class would be more likely [than a national class].

So it is still an open issue. *** So if you chose to do that, you should present something to me."

The court's written order staying plaintiff's motion further stated: "Plaintiff is given 21 days to October 6, 2004, to file a motion for leave to file an amended complaint or other pleading, adding a plaintiff class representative for an Illinois class only."

Plaintiff subsequently filed his motion to file an amended complaint, arguing that a statewide class would be more likely certified than a nationwide class because "applying Illinois law to the putative Illinois class would resolve the alleged manageability concerns." The motion did not address the requirement in the trial court's order that the motion name a new Illinois class representative.

No. 1-04-3879

Denying defendant's motion for reconsideration, the court stated, in relevant part:

"Plaintiff argues that this court should allow a substitute plaintiff. *** Plaintiff, however, has not presented anything to this court showing that the certification of such a class would be anymore likely [than a nationwide claim]."

The trial court also amplified its original ruling concerning plaintiff's breach of implied warranty claim by stating:

"Plaintiff once again argues that he is not required to establish vertical privity ***. Plaintiff is wrong. Plaintiff is asserting a claim for economic losses, not for personal injury. Plaintiff's allegation that he suffered leg cramps is irrelevant. He is not bringing a claim for damages suffered from his leg cramps. Our supreme court has clearly held that claims for economic losses are subject to the requirement of privity."

The court also clarified its original reasoning concerning plaintiff's medical monitoring claim:

"Plaintiff *** argues that this court erred in granting summary judgment on his medical monitoring claim. Plaintiff, however, still offers no evidence that he is in need of medical monitoring. Plaintiff's treating physicians

testified that Plaintiff is not in need of medical monitoring due to taking Baycol. It is plaintiff's burden to come forth with some evidence, not speculation, of his need for medical monitoring to survive summary judgment. There is no such evidence in the record and no genuine issue of material fact to be decided."

This appeal followed.

## II. Summary Judgment Standard

We review summary judgment orders *de novo*. State Farm Mutual Automobile Insurance Co. v. Universal Underwriters Group, 285 Ill. App. 3d 115, 120 (1996). Summary judgment should be granted when "the pleadings, depositions, and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact" and the moving "party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2002). However, summary judgment is a drastic measure and should only be granted when the moving party's right to judgment is clear and free from doubt. Bourgonje v. Machev, 362 Ill. App. 3d 984, 995 (2005).

## III. ANALYSIS

### A. Consumer Fraud Claim

We first address the contention that the trial court erred by granting summary judgment in favor of defendant on plaintiff's

No. 1-04-3879

consumer fraud claim. Plaintiff alleges that defendant violated the Consumer Fraud Act by concealing Baycol's safety risks from the public.

The Act provides that " 'deceptive acts or practices *** or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact *** in the conduct of any trade or commerce are hereby declared unlawful.' " Avery v. State Farm Mutual Insurance Co., 216 Ill. 2d 100, 179 (2005), quoting 815 ILCS 505/2 (West 1998). To prove a private cause of action under the Act, a plaintiff must establish: "(1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff, (5) proximately caused by the deception." Avery, 216 Ill. 2d at 180, citing Oliveira v. Amoco Oil Co., 311 Ill. App. 3d 886, 898 (2000).

The Act indicates that sellers have a duty not to conceal or suppress known material facts regarding products from potential buyers. Miller v. William Chevrolet/Geo, Inc., 326 Ill. App. 3d 642, 658 (2001); Totz v. Continental Du Page Acura, 236 Ill. App. 3d 891, 902 (1992). In the present case, plaintiff claims that defendant omitted material facts concerning Baycol's safety. For

-12-

liability to attach due to an alleged concealment, a plaintiff must establish that the fact concealed was known to the seller at the time of concealment. Miller, 326 Ill. App. 3d at 658. Moreover, a plaintiff must establish that defendants intended that they rely on the suppression in making their choice to buy. Miller, 326 Ill. App. 3d at 658.

In the case *sub judice*, plaintiff points to nothing in the record evidencing an intent to conceal information from the public. Plaintiff's sole piece of evidence, defendant's announcement that it intended to remove Baycol from the market, does not indicate an intent to conceal. The most natural and unstrained interpretation of defendant's statement, in our view, indicates that defendant's ongoing monitoring of Baycol revealed that Baycol may no longer be safe to the public. This is not an admission, either implicitly or explicitly, that defendant *concealed* the safety of its product from the public. On a motion for summary judgment, plaintiff must produce *some* evidence in favor of its claim. See, *e.g.*, Petrik v. Monarch Printing Corp., 143 Ill. App. 3d 1, 4 (1986) (noting that to survive a motion for summary judgment, a plaintiff "cannot rest upon his complaint, but must submit affidavits and other documentary evidence to create an issue of fact"). For the reasons outlined above, we conclude that plaintiff failed in this endeavor.

No. 1-04-3879

Furthermore, it is a well-established principle of law that a recall announcement is not an admission of fault. See, *e.g.*, Perona v. Volkswagen of America, Inc., 292 Ill. App. 3d 59, 64 (1997)("the taking of precautions against the future, such as issuance of recall letters, cannot be construed as an admission of responsibility for the past"). Similarly, we do not view a recall announcement as evidence of concealment, particularly since even a strained interpretation of defendant's announcement could not be construed as an admission of concealment. An unstrained interpretation of the statement merely reveals that, as a precautionary measure, defendant decided to recall Baycol from the market. Under plaintiff's interpretation of the Act, any recall announcement, such as in the present case, would provide a *prima facie* case for concealment. This result, in our view, constitutes an unsupportable and unreasonable extension of the Act. We therefore decline to adopt it. See, *e.g.*, Estate of Heanue v. Edgcomb, 355 Ill. App. 3d 645, 650 (2005) ("Statutes, of course, must be construed to avoid absurd results"). Similarly problematic, plaintiff provides no support for such an extension of the Act and we therefore need not consider it. Washington v. Caseyville Health Care Ass'n, 284 Ill. App. 3d 97, 102 (1996).

Plaintiff's claim also lacks merit because of his inability

to show that he was actually deceived by any omission made by Bayer. Our supreme court has explicitly stated that a plaintiff pursuing a consumer fraud claim for an alleged omission must show that he was deceived by the omission. Avery v. State Farm Mutual Automobile Insurance Co., 216 Ill. 2d 100, 200 (2005) ("Proximate causation is an element of all private causes of action under the Act. Thus, [the plaintiff] must establish that he was deceived by [the defendant's] representations or omissions"). Here, there is no evidence of an omission; thus, we fail to see how any actual deception can be shown.

B. Breach of Implied Warranty Claim

We next address plaintiff's argument that the trial court erred by dismissing his breach of warranty claim. The trial court dismissed this claim for two reasons: first, plaintiff failed to establish privity with defendant; second, plaintiff failed to provide sufficient notice to defendant. On appeal, plaintiff argues that notice and privity were sufficient because he suffered a personal injury, which is an exception to the general notice and privity requirements for breach of warranty claims.

In order for a plaintiff to file a claim for economic damages under the Uniform Commercial Code (UCC)(810 ILCS 5/1-101 et seq. (West 2002)) for the breach of an implied warranty, he or

she must be in vertical privity of contract with the seller. Rothe v. Maloney Cadillac, Inc., 119 Ill. 2d 288, 292 (1988); Szajna v. General Motors Corp., 115 Ill. 2d 294, 311 (1986). "This means that 'the UCC article II implied warranties gives a buyer of goods a potential cause of action only against his immediate seller.' " Mekertichian v. Mercedes-Benz U.S.A., L.L.C., 347 Ill. App. 3d 828, 832 (2004), quoting Rothe v. Maloney Cadillac, Inc., 119 Ill. 2d 288, 292 (1988). Thus, plaintiff would only have a cause of action for breach of implied warranty of merchantability against the entity from which he purchased Baycol and not against defendant. Here, plaintiff acknowledged in his interrogatory answers that he purchased Baycol directly from a pharmacy and not defendant. Thus, plaintiff's suit should have been brought against this pharmacy.

Plaintiff argues that he may obviate the privity requirement because of his personal injury allegation. We are not persuaded. Although a plaintiff may be excepted from the privity requirement by suing for personal injury (Perona, 292 Ill. App. 3d at 64), plaintiff here has not bought an action for personal injury. Plaintiff alleges in his complaint that "Defendant[] breached this warranty of merchantability by selling Baycol as being fit for its ordinary purpose when, in fact, it was not." In other words, though he allegedly suffered personal injury, he is not

suing for personal injury nor does he seek compensation for any alleged personal injury. Indeed, during oral argument concerning class certification, plaintiff's counsel admitted as much by stating that plaintiff's class "[d]oes not seek to include personal injury claims. *** There are financially injured people. And those are the people [plaintiff] chooses to represent." Thus, plaintiff, by his own admission, is suing for purely economic loss. See Lowe v. Kang, 167 Ill. App. 3d 772, 776 (1988) (holding that an attorney is the client's agent and statements made by the attorney are binding on the client). He therefore was required to prove privity but could not. Thus, the trial court correctly granted summary judgment on that basis. Szajna v. General Motors Corp., 115 Ill. 2d 294, 311 (1986).

In light of our conclusion that plaintiff failed to establish privity with Bayer, thereby forfeiting his implied warranty claim, we need not address defendant's argument that the plaintiff provided insufficient notice for his implied warranty claim.

### C. Medical Monitoring Count

We next address plaintiff's contention that the trial court erred by granting summary judgement in favor of defendant on plaintiff's medical monitoring claim. Specifically, plaintiff argues in his briefs that "Baycol exposed him and other putative

class members to an increased risk of developing rhabdomyolysis," and that his medical monitoring claim was therefore a "viable claim."

Defendant argues that no Illinois state case has addressed whether a cause of action sounding in medical monitoring exists in Illinois, where the plaintiff asserts no claim for present personal injury and does not seek recovery for personal injury.

Plaintiff, in his reply brief, cites to Carey v. Kerr-McGee Chemical Corp, 999 F. Supp. 1109, 1119-20 (N.D. Ill. 1998), and Lewis v. Lead Industries Ass'n, 342 Ill. App. 3d 95, 100-02 (2003), for the proposition that a claim for medical monitoring exists in Illinois without proof of present physical injury. In Carey, the court addressed whether Illinois law provides for a claim for medical monitoring to detect the onset of physical harm in the absence of any showing of present physical harm. The court determined that if the Illinois Supreme Court confronted this issue, allowing medical monitoring claims would not conflict with Illinois law. Carey, 999 F. Supp. at 1120. The appropriate inquiry for such a claim, according to the Carey court, would be whether "medical monitoring is, to a reasonable degree of medical certainty, necessary in order to diagnose properly the warning signs of disease." Carey, 999 F. Supp. at 1119.

Assuming, *arguendo*, that our supreme court would recognize

such a claim, the trial court nevertheless would have been justified in granting an order of summary judgment in favor of defendant because plaintiff failed to produce any evidence in support of such a claim other than his own bald allegation. Plaintiff presented no evidence to the effect that "medical monitoring is, to a reasonable degree of medical certainty, necessary in order to diagnose properly the warning signs of disease." Carey, 999 F. Supp. at 1119. To survive a motion for summary judgement, a plaintiff "cannot rest upon his complaint but must submit affidavits and other documentary evidence to create an issue of fact." Petrik v. Monarch Printing Corp., 143 Ill. App. 3d 1, 4 (1986). Here, plaintiff offers nothing in support of his medical monitoring claim other than his own allegation that Baycol caused him leg cramps. This allegation is insufficient to survive summary judgment. Towner v. Board of Education, 275 Ill. App. 3d 1024, 1031 (1995) (to survive summary judgment, a plaintiff must offer "evidence, as opposed to mere allegations"). Indeed, the evidence in the record seems to invite a different conclusion. Plaintiff's own doctors testified that no future medical monitoring would be necessary for plaintiff.

Moreover, the plaintiff failed to mention in his initial brief, or to the trial court below, the principle explained in

Carey; namely, that a plaintiff may bring a claim for medical monitoring if plaintiff shows, "to a reasonable degree of medical certainty, [that medical monitoring] is necessary in order to diagnose properly the warning signs of disease." Plaintiff therefore forfeited such an argument. Daniels v. Anderson, 162 Ill. 2d 47, 58 (1994), quoting Kravis v. Smith Marine, Inc., 60 Ill. 2d 141, 147 (1975) (" 'an issue not presented to or considered by the trial court cannot be raised for the first time on review' "); see also People v. Patel, 366 Ill. App. 3d 255, 268 (2006) ("It is well settled that points not argued in appellant's opening brief are waived and shall not be raised in the reply brief").

We are similarly unpersuaded by plaintiff's reliance on Lewis. The plaintiff in Lewis sought compensation for the cost of medical testing made necessary by the defendant's manufacturing, marketing, and sale of a lead pigment. Lewis, 342 Ill. App. 3d at 101. We consider Lewis to be inapplicable because there, unlike here, the plaintiff sought compensation for medical testing to detect a *present* physical injury. Lewis, 342 Ill. App. 3d at 101 ("In this case *** we are faced with the *** question of whether the cost of diagnostic testing to detect a possible injury *** is initself a present [compensable] injury"). Thus, the court did not address the question posed by plaintiff

here; namely, whether a plaintiff may bring a claim for medical monitoring for potential *future* harm, where no present injury is shown.

Based on our conclusion that plaintiff's individual claims lacked merit, we believe that the trial court properly denied plaintiff's motion for class certification because plaintiff was an inadequate representative. See <u>Landesman v. General Motors Corp.</u>, 72 Ill. 2d 44, 48 (1978) (stating that class certification requires that "the named representative[] of the putative class possess[] a valid cause of action" against defendant).

D. Plaintiff's Motion for Leave to File an Amended Complaint

Plaintiff contends that the trial court erred in denying his motion for leave to file an amended complaint or other pleadings adding a plaintiff class representative for an Illinois class. The trial court allowed plaintiff leave to file an amended complaint for an Illinois-only class with two conditions: first, that plaintiff establish that a statewide class was more likely to be certified than a nationwide class; second, that plaintiff join a new class representative. We do not believe the denial of plaintiff's motion constituted reversible error. A reviewing court will reverse a trial court's order concerning a motion for leave to file an amended complaint only if a clear abuse of discretion is shown. <u>Orr v. Shepard</u>, 171 Ill. App. 3d 104, 109

No. 1-04-3879

(1988).

Here, plaintiff failed to meet either of the trial court's stipulations discussed above.  Though plaintiff, in his motion for leave to file an amended complaint, stated that "applying Illinois law to the putative Illinois class would resolve the alleged manageability concerns," plaintiff did not explain how the trial court's alleged manageability concerns would be resolved by an Illinois class.  Thus, plaintiff's attempt to address the trial court's concern was conclusory and by no means illuminative.  Moreover, the motion failed to name a new class representative, an explicit requirement stated by the trial court in its order.  We therefore see no abuse of discretion in the trial court's disposition of the matter.

## Conclusion

For the foregoing reasons, we affirm the trial court's order granting summary judgement in favor of defendant and the denial of the motion for class certification.

McNULTY and JOSEPH GORDON, JJ., concur.