NOTICE

Decision filed 10/09/08. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

NO. 5-06-0077

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| TERESA DE BOUSE, Individually and On Behalf of Others Similarly Situated, | ) ) ) | Appeal from the Circuit Court of St. Clair County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 04-L-53 |
| BAYER AG, BAYER CORPORATION, SMITHKLINE BEECHAM CORPORATION, d/b/a GLAXOSMITHKLINE, GLAXOSMITHKLINE PLC, MARCY GRIM, MICHAEL HARVEY DAVIDSON, M.D., and MICHAEL LEVER, | ) ) ) ) ) ) ) | |
| | ) ) | Honorable Michael J. O'Malley, |
| Defendants-Appellants. | ) | Judge, presiding. |

_____

JUSTICE DONOVAN delivered the opinion of the court:

A class action complaint sounding in consumer fraud was filed in the circuit court of St. Clair County by the plaintiff, Teresa De Bouse, individually and on behalf of other similarly situated Illinois residents, alleging that the defendants, Bayer AG, Bayer Corp., SmithKline Beecham Corp., doing business as GlaxoSmithKline, GlaxoSmithKline PLC, Marcy Grim, Michael Harvey Davidson, M.D., and Michael Lever, committed common law fraud and violated the Illinois Consumer Fraud and Deceptive Business Practices Act (the Consumer Fraud Act) (815 ILCS 505/1 *et seq.* (West 2004)), in concealing negative safety and efficacy data on a pharmaceutical product it offered for sale in Illinois. The St. Clair County circuit court granted the plaintiff's motion to certify the case as a class action. The circuit court denied the defendants' motion for a summary judgment, but it certified three questions of law for appellate review pursuant to Supreme Court Rule 308(a) (155 Ill. 2d R.

1

308(a)). The defendants filed a petition for leave to appeal the class certification order pursuant to Supreme Court Rule 306(a)(8) (210 Ill. 2d R. 306(a)(8)), and leave was initially granted. The defendants filed a separate application, petitioning this court to consider the questions that had been certified by the trial court, and the application was granted. The appeals were consolidated under cause No. 5-06-0077.

After reviewing the record, we determined that the defendants' appeal from the class certification order was untimely, and we dismissed the appeal for a lack of jurisdiction. *De Bouse v. Bayer AG*, 373 Ill. App. 3d 774, 782, 869 N.E.2d 365, 372 (2007). The defendants included a number of arguments in regard to the denial of their summary judgment motion. We declined to specifically address those arguments on grounds that the denial of a summary judgment motion is not a final, appealable order, that this court had limited the interlocutory appeal to the certified questions, and that there appeared to be questions of material fact about which discovery had not been conducted. *De Bouse*, 373 Ill. App. 3d at 783, 869 N.E.2d at 372. As to the certified questions, we found that in order to establish consumer fraud under a theory of a concealment of a material fact in the conduct of trade or commerce, it is sufficient to show that the facts concealed were known to the defendant at the time of the concealment, that the defendant intended that the plaintiff rely on the deception, that the plaintiff is actually deceived, whether by direct or indirect deception, and that if the plaintiff had known about the concealed facts, she would not have purchased the product. *De Bouse*, 373 Ill. App. 3d at 784-85, 869 N.E.2d at 373-74. The defendants appealed. The Illinois Supreme Court entered a supervisory order, directing this court to vacate the judgment and to reconsider it in light of *Barbara's Sales, Inc. v. Intel Corp.*, 227 Ill. 2d 45, 879 N.E.2d 910 (2007). *De Bouse v. Bayer AG*, 226 Ill. 2d 613, 880 N.E.2d 181 (2008). In accordance with the mandate of the supreme court, we vacated our prior opinion, and we ordered supplemental briefing. Upon reconsidering the case in light of *Barbara's Sales, Inc.*, we do

2

not find that a different result is warranted. Our reasons are set forth in the following opinion.

## I. Procedural History

This is a class action case involving the prescription drug cerivistatin, which was sold in the United States under the brand name Baycol. Baycol is a member of a class of statin drugs that are prescribed to lower the lipid levels of individuals with high cholesterol. Between 1997 and 2000, the Food and Drug Administration had approved the various doses of Baycol for use in the United States. The plaintiff's personal physician prescribed Baycol for the plaintiff beginning in February 2001. The plaintiff purchased Baycol on February 22, 2001, May 23, 2001, and July 30, 2001. Each prescription contained 30 tablets. The price for 30 tablets was $51.09, but the plaintiff's copay was $25. In August 2001, Baycol was withdrawn from the market because its use was associated with a serious medical condition called rhabdomyolysis. Sometime in August 2001, a pharmacist from the plaintiff's pharmacy called the plaintiff and directed her to stop taking Baycol and to contact her physician for an alternative drug. The plaintiff did not use the remainder of the Baycol prescription.

The plaintiff filed a three-count complaint against the defendants on behalf of herself and a class of Illinois residents who had purchased Baycol. Illinois residents who allege or have alleged personal injuries or death as a result of taking Baycol were excluded from the class. Count I and count III of the first amended complaint are brought under the Consumer Fraud Act (815 ILCS 505/1 *et seq.* (West 2004)). Count I alleges that the defendants offered Baycol for sale, representing that it was reasonably safe for its intended purpose, that the defendants knowingly and intentionally concealed and suppressed information regarding known risks and dangers of Baycol with the intent that the plaintiff purchase it, that the plaintiff was actually deceived in that she purchased a drug that she would not have

3

purchased had she been aware of the information regarding risks and dangers that had been concealed and suppressed, and that she suffered damages in the amount of the purchases. Count III alleges that by concealing the known risks and dangers associated with use of Baycol, the defendants were able to charge prices far in excess of the fair market value of the drug, thereby committing one or more unfair practices under the Consumer Fraud Act. Count II alleges common law civil conspiracy to commit fraud based on the aforementioned violations of the Consumer Fraud Act.

In a discovery deposition, the plaintiff testified that she had no independent knowledge of Baycol at the time her physician prescribed it. She had not reviewed medical references on Baycol. She had not done any research on Baycol. The plaintiff stated that she relied on her physician to make medical judgments about proper medications. The plaintiff stated that she understood that some prescription medications have potential side effects. She testified that she would not take a medication if she determined that the risks of harm outweighed the benefits. She stated that she would rely on her physician and on the drug information sheet that was attached to the prescription bag by the pharmacy to make a determination regarding the purchase and use of prescription drugs.

The defendants filed a motion for a summary judgment, claiming that the plaintiff's deposition testimony establishes, as a matter of law, that she cannot make a *prima facie* case under the Consumer Fraud Act. The defendants stated that the plaintiff testified that she had not seen, read, or heard anything about the drug and that she relied on her physician's judgment in purchasing the product. The defendants argued that the plaintiff's own testimony shows that she could not have been actually deceived or damaged by any misrepresentation or concealment by the defendants. The plaintiff responded that actual deception can be established where the defendants, in offering a prescription drug for sale while concealing adverse reactions and known risks, misrepresented that the product was safe for its intended

4

uses, that in the absence of published information about the risks and dangers, the plaintiff reasonably relied on the misrepresentations that the product was safe for its intended uses, and that the plaintiff would not have purchased the product had she known about the safety risks.

The circuit court denied the defendants' motion for a summary judgment. The court certified three questions of law for review in accordance with Supreme Court Rule 308(a).

## II. The Rule 308(a) Appeal

At the outset, we note that the defendants have devoted a considerable portion of their brief in the Rule 308(a) appeal to arguments claiming that the circuit court erred in denying their motion for a summary judgment. We decline to specifically address those arguments for three reasons. First, the denial of a motion for a summary judgment is interlocutory in nature, and it is not a final, appealable order. See *La Salle National Bank v. Little Bill "33" Flavors Stores, Inc.*, 80 Ill. App. 2d 298, 225 N.E.2d 465 (1967). Second, we limited interlocutory review to the legal questions certified by the trial court. Third, after considering the theory of consumer fraud alleged in the complaint and discussed in the plaintiff's testimony, we find that there appear to be material factual issues about which discovery has not been had. A review of the defendants' motion for a summary judgment would not advance a resolution of the case or serve judicial economy.

The circuit court determined that a resolution of the following questions of law could materially advance the disposition of the litigation, and it certified the questions in accordance with Supreme Court Rule 308(a):

"I. Whether an Illinois consumer who purchases a pharmaceutical product, later withdrawn from the market because it was deemed unsafe, can maintain an action under the Illinois Consumer Fraud Act [citation], even though the pharmaceutical company did not engage in direct communication or advertising to the

5

consumer.

II. Whether the Defendants['] offering for sale of a product in Illinois is a representation to prospective customers that the product is reasonably safe for its intended purpose such that proof of a defendants' [*sic*] failure to disclose safety risks associated with the product to consumers is a violation of the Illinois Consumer Fraud Act.

III. Whether fraudulent statements or omissions made by a defendant to third[] parties, other than the consumer, with the intent that they (1) reach the plaintiff[] [and] (2) influence plaintiff's action[,] and (3) [when] plaintiff relies upon the statements to his detriment, can support an action under the Illinois Consumer Fraud Act."

The elements of a claim under the Consumer Fraud Act are as follows: (1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in a course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception. 815 ILCS 505/2 (West 2004); *Zekman v. Direct American Marketers, Inc.*, 182 Ill. 2d 359, 373, 695 N.E.2d 853, 860-61 (1998). The certified questions seem to be directed toward clarifying the factual allegations necessary to satisfy these elements in a case asserting an intentional suppression of material facts and indirect deception.

In *Shannon v. Boise Cascade Corp.*, 208 Ill. 2d 517, 805 N.E.2d 213 (2004), the Illinois Supreme Court recognized that though proof of the actual deception of a plaintiff is required to establish the proximate cause requirement, the deception need not always be direct between the defendant and the plaintiff. *Shannon*, 208 Ill. 2d at 525-26, 805 N.E.2d at 218. It is enough that the defendant's deception, whether made directly or indirectly, be committed with the intention that it influence the plaintiff's action and that the plaintiff relied on the deception to her detriment. *Shannon*, 208 Ill. 2d at 526, 805 N.E.2d at 218; *St. Joseph*

6

*Hospital v. Corbetta Construction Co.*, 21 Ill. App. 3d 925, 954, 316 N.E.2d 51, 72 (1974). In illustrating the concept of "indirect deception," the supreme court proposed a hypothetical case in which a defendant's product literature had actually deceived a particular builder, architect, or contractor, resulting in the installation of defective siding on a home. *Shannon*, 208 Ill. 2d at 526, 805 N.E.2d at 218. The supreme court concluded, under those circumstances, that the purchaser, who may have no independent knowledge of the qualities or expected performance of a siding, is deceived because of the deception of the builder, architect, or contractor, who reasonably should have correct knowledge, and that the damages could have arguably occurred as a result of the indirect deception. *Shannon*, 208 Ill. 2d at 526, 805 N.E.2d at 218.

The Illinois Supreme Court also recognized that the omission or concealment of a material fact in the conduct of trade or commerce constitutes consumer fraud. *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 504, 675 N.E.2d 584, 595 (1996). A material fact exists where a buyer would have acted differently if he had known of the suppressed information or if the concealed fact concerned the type of information on which a buyer would be expected to rely in making a decision regarding the purchase of the product. *Connick*, 174 Ill. 2d at 505, 675 N.E.2d at 595.

In order to establish consumer fraud under a theory of concealment by silence,[1] the

_____

[1]A similar cause of action was asserted in *Jensen v. Bayer AG*, 371 Ill. App. 3d 682, 862 N.E.2d 1091 (2007). In *Jensen*, a summary judgment was granted for the defendant because the plaintiff failed to submit some evidence on two elements that are necessary to prove a violation of the Consumer Fraud Act, *i.e.*, the defendant's intent to conceal or that the plaintiff was actually deceived by any omission made by the defendant. *Jensen* was decided after the parties had an opportunity for discovery on the merits. Aside from recognizing the existence of a cause of action under similar facts, we do not find *Jensen* to

7

plaintiff must allege and establish that the defendant concealed material facts regarding its product, that the deception, whether made directly or indirectly, was committed with the intent that it influence the plaintiff's action, that the plaintiff actually relied on the defendant's deception, and that if the plaintiff had known of the facts concealed, she would not have purchased the product. *Connick*, 174 Ill. 2d at 504-05, 675 N.E.2d at 595; *Pappas v. Pella Corp.*, 363 Ill. App. 3d 795, 804-06, 844 N.E.2d 995, 1003-04 (2006).

The defendants submit that this case is governed by a line of decisions in which the Illinois Supreme Court held that deceptive advertising could not be the proximate cause of damages unless the plaintiff was actually deceived by the misrepresentation, and they cite *Avery v. State Farm Mutual Auto Insurance Co.*, 216 Ill. 2d 100, 835 N.E.2d 801 (2005), *Price v. Philip Morris, Inc.*, 219 Ill. 2d 182, 848 N.E.2d 1 (2005), and *Zekman*, 182 Ill. 2d 359, 695 N.E.2d 853, among others. In those cases, the alleged deceptions arose from affirmative representations, such as specific promises or deceptive advertisements. In those types of cases, the supreme court has said that in order to establish proximate cause, the plaintiff must allege and show that she was actually deceived by a specific promise or representation. *Avery*, 216 Ill. 2d at 200, 835 N.E.2d at 861; *Zekman*, 182 Ill. 2d 375-76, 695 N.E.2d at 861-62.

In a supplemental brief filed on remand from the supervisory order, the defendants claimed that *Barbara's Sales, Inc. v. Intel Corp.*, 227 Ill. 2d 45, 879 N.E.2d 910 (2007), supports its position. The defendants argued that in *Barbara's Sales, Inc.*, the Illinois Supreme Court emphasized that actual deception must be established and that a deceptive advertising campaign cannot be the proximate cause of damages unless representations made in the campaign actually deceived the plaintiff. The defendants argued that based on the plaintiff's own testimony, the plaintiff cannot meet the threshold requirements set out in

be helpful in regard to the issues here.

8

*Barbara's Sales, Inc.*

In *Barbara's Sales, Inc. v. Intel Corp.*, the plaintiff alleged that the defendant made affirmative deceptions in marketing a new generation of microprocessor. *Barbara's Sales, Inc.*, 227 Ill. 2d at 73, 879 N.E.2d at 926. While the primary issue in *Barbara's Sales, Inc.* concerned a choice-of-law question, the adequacy of the consumer fraud allegations was considered as a part of the class certification issue. In *Barbara's Sales, Inc.*, the Illinois Supreme Court held that the defendant's implicit representations that its Pentium 4 microprocessor was "the best," and that it had a higher overall performance when compared with the Pentium III, amounted to "puffing" and that the representations were not "deceptive acts" within the purview of the Consumer Fraud Act. *Barbara's Sales, Inc.*, 227 Ill. 2d at 73, 879 N.E.2d at 926. The supreme court also found that though the defendant's internal documents revealed that its predecessor product, the Pentium III, was faster in some of the performance testing when compared with the Pentium 4, the documents did not establish deceptive advertising because it was not apparent that the defendant had made any false public claims regarding specific speed benchmarks and the internal documents revealed that the processing speeds varied by application. *Barbara's Sales, Inc.*, 227 Ill. 2d at 76, 879 N.E.2d at 927-28.

Unlike *Barbara's Sales, Inc.*, the case at bar does not concern affirmative representations or "puffing" in a marketing campaign. *Barbara's Sales, Inc.*, 227 Ill. 2d at 73, 879 N.E.2d at 926. Unlike *Barbara's Sales, Inc.*, the defendants in this case allegedly suppressed and concealed negative safety and efficacy data associated with the use of Baycol, to influence prescribing physicians and their patients. The act of intentionally suppressing and concealing material information–information that identifies adverse reactions and serious injuries associated with use of a pharmaceutical product–with the intent to influence purchasing decisions is an implicit misrepresentation of the safety and efficacy of the

9

product, and if the consumer is actually deceived thereby, the deception may give rise to a consumer fraud action. Given the significant differences between *Barbara's Sales, Inc.* and the case at bar, we do not believe that *Barbara's Sales, Inc.* is controlling here.

In comparing and contrasting the aforementioned authorities for purposes of discerning the factual allegations necessary to a cause of action under the Consumer Fraud Act, we find very fine but significant distinctions between cases alleging an affirmative deception and cases alleging a deception by silent concealment and also between cases alleging direct deception and cases alleging indirect deception. These distinctions remain after *Barbara's Sales, Inc.* Had the Illinois Supreme Court determined that the theory of concealment by silence was no longer sound, it would have expressly overruled the line of cases approving that theory. Accordingly, we conclude that the theory remains viable.

The complaint at issue involves a claim of indirect deception by silent concealment. The plaintiff has alleged that she had no independent knowledge of the benefits and the dangers associated with the use of Baycol, that the suppression of data that identified adverse reactions and serious injuries associated with use of Baycol constituted an implicit misrepresentation of the safety and efficacy of Baycol, and that the suppression of material facts was a deceptive practice under the Consumer Fraud Act. The plaintiff has alleged that she was actually deceived by the defendant's suppression and concealment of negative efficacy and safety information associated with the use of Baycol, that she was deceived because of the alleged deception of persons, such as her physician and her pharmacist, who reasonably should have correct knowledge about the efficacy and safety of Baycol, and that she would not have purchased Baycol had she been made aware of the suppressed information. The plaintiff also alleged that she suffered actual out-of-pocket losses in purchasing the product.

We pause here to note that we differ with the dissent not only on whether the plaintiff

10

can establish actual deception but also on the issue of proximate cause for damages. The dissent notes that the complaint does not allege that the plaintiff suffered any personal injury as a result of using the drug or that the drug did not lower the plaintiff's cholesterol. The dissent suggests that the plaintiff cannot establish that she suffered actual damages, even if the purchase was based on deceptive conduct, if the drug lowered the plaintiff's cholesterol without causing any side effects, because the plaintiff would have gotten exactly what she paid for: a safe, cholesterol-lowering drug. In our view, a consumer who is fortunate to avoid a known but concealed adverse reaction associated with the use of a medication does not necessarily "get her money's worth." Product value is determined by the price, the product's efficacy and benefits, the product's safety risks, and the availability of other products relative to price, performance, and risk. A consumer cannot judge "true value" where known information regarding product performance is withheld. A consumer is entitled to make an informed choice, in conjunction with her health care professionals, about the actual risks and benefits of a prescription drug. In this case, the plaintiff clearly stated that she would not have purchased Baycol, and accepted the risks associated with use of Baycol, had she been informed of the risks.

Following the reasoning and bases underlying the decisions in *Shannon* and *Connick*, we answer the first and third certified questions in the affirmative, because the Illinois Supreme Court has recognized a cause of action under the Consumer Fraud Act based on a claim of indirect deception. The second question, as phrased, presents a mixed question of fact and law, and therefore it is not a proper question under Supreme Court Rule 308(a).

### III. Jurisdiction and the Class Certification Order

The defendants filed their petition for leave to appeal the class certification order pursuant to Supreme Court Rule 306(a)(8). The plaintiff moved to dismiss the appeal for a lack of appellate jurisdiction. Initially, this court denied the plaintiff's motion to dismiss and

11

granted the defendants' petition for leave to appeal. After reviewing the record, we determined that it was necessary to revisit the issue of jurisdiction. After reconsidering the issue of jurisdiction in light of the record, we conclude that the Rule 306(a)(8) appeal was untimely filed and must be dismissed.

The record shows that a hearing was held on the plaintiff's motion for class certification on July 29, 2005. At the close of the hearing, the circuit court announced that it would take the matter under submission. The court then entered a written order stating that the issue was under submission. The parties submitted proposed orders for the court's consideration. On September 1, 2005, the court signed a 12-page order granting the certification of the class. The order is contained in the court file. It bears a file stamp of September 2, 2005. The court file also includes a computerized docket sheet that contains an entry dated September 2, 2005, indicating that a 12-page order was entered that date. There is no indication that the order was served personally or by mail on counsel of record.

The record shows that the parties appeared in open court on September 27, 2005, and December 29, 2005, in relation to the summary judgment motion that had been filed in the case. The order entered after the hearing on September 27, 2005, specifically states that all the parties appeared by counsel on that date. The parties also appeared for a status conference on January 11, 2006.

On January 25, 2006, the defendants filed a motion to vacate or amend the class certification order *nunc pro tunc* on the grounds that they had not received a notice of the entry of the order granting class certification, that the circuit court clerk had failed to serve a copy of the order on all the parties and had failed to note that service in the file as required by Twentieth Judicial Circuit Rule 2.06 (20th Judicial Cir. Ct. R. 2.06 (eff. December 12, 1991)), and that they made diligent efforts to monitor the court file once the motion had been taken under advisement by the court. The defendants asserted that the first time they became

12

aware that the order had been entered was during the status conference on January 11, 2006, that their right to appeal was "severely prejudiced," and that the circuit court had the authority to enter a *nunc pro tunc* order to avoid the prejudice. The defendants attached affidavits from the defendants' attorneys and their staff members. The affidavits outlined the efforts undertaken to monitor the court file.

The plaintiff filed a response in opposition to the defendants' motion for an order *nunc pro tunc*. Therein, the plaintiff stated that her attorneys obtained a copy of the class certification order by appearing in person at the circuit clerk's office on or about September 5, 2005, and making an inquiry about the status of the class certification motion. The plaintiff attached affidavits from its attorneys and a copy of the computerized docket sheet that revealed an entry of September 2, 2005, referencing a 12-page order.

On January 30, 2006, the court held a hearing on the defendants' motion to vacate or amend the class certification order *nunc pro tunc*. After considering the arguments of counsel, the judge said, "It's only just that I enter an order *nunc pro tunc* if that in some way can protect your right to appeal this thing if that's the right thing to do." The court then entered the following order:

> "Defendants' Motion to Vacate or Amend Class Certification Order Nunc Pro Tunc called and heard. Over plaintiff's objection, said motion is hereby GRANTED. The Court's Order dated September 2, 2005, granting Plaintiff's Motion For Class Certification is hereby vacated nunc pro tunc and amended to be entered January 11, 2006, the date the defendants' [*sic*] received notice of said Order."

The defendants filed their petition for leave to appeal the certification order on February 10, 2006.

Supreme Court Rule 306(a)(8) allows a party to petition for leave to appeal from an order granting or denying the certification of a class action. Supreme Court Rule 306(c) (210

13

Ill. 2d R. 306(c)) requires that the petition be filed in the appellate court within 30 days after the entry of the order granting or denying the certification. The 30-day time limit under Rule 306 is jurisdictional. *Kemner v. Monsanto Co.*, 112 Ill. 2d 223, 236, 492 N.E.2d 1327, 1333 (1986); *Leet v. Louisville & Nashville R.R. Co.*, 131 Ill. App. 3d 763, 765, 475 N.E.2d 1340, 1341-42 (1985). There is no provision for extending the time for filing a petition for interlocutory appeal other than by permission of the reviewing court pursuant to Rule 306(f) (210 Ill. 2d R. 306(f)).

In this case, the certification order was entered on September 2, 2005. By our calculation, the petition for leave to appeal should have been filed no later than Monday, October 3, 2005. The defendants' petition for leave to appeal was not filed until February 10, 2006, and they did not seek permission from this court to file an untimely petition for leave to appeal. In accordance with the time limits set forth in Supreme Court Rule 306, the defendants' petition for leave to appeal was filed out of time. The defendants presented a number of legal and equitable arguments to the trial court in support of their motion to vacate or amend the certification order *nunc pro tunc*. We have considered those arguments, and for the reasons discussed below, we have concluded that the defendants have not established any basis for excusing their failure to file the petition for leave to appeal within the 30-day time limit.

The defendants have argued that an order to vacate or amend the certification order *nunc pro tunc* is proper because the circuit clerk's failure to provide notice of the entry of the certification order prejudiced their right to file a petition for leave to appeal. The Illinois Supreme Court has considered and rejected similar arguments. *Mitchell v. Fiat-Allis, Inc.*, 158 Ill. 2d 143, 632 N.E.2d 1010 (1994); *Granite City Lodge No. 272, Loyal Order of the Moose v. City of Granite City*, 141 Ill. 2d 122, 565 N.E.2d 929 (1990).

In *Mitchell v. Fiat-Allis, Inc.*, the trial court signed an order disposing of the case on

14

February 27, 1991. The order was file-stamped March 1, 1991, and included instructions to the circuit court clerk to send a copy of the order to the attorneys of record. Mitchell's attorney first learned of the order on April 25, 1991. After conferring with opposing counsel and the trial court, Mitchell's counsel filed a petition to withdraw or vacate the order. On April 29, 1991, the trial court granted the petition, withdrew the order dated February 27, 1991, and reentered the same order, effective April 29, 1991. The appellate court found that it had jurisdiction and considered the merits of the appeal. The Illinois Supreme Court reversed, finding that the trial court lacked the authority to vacate and reenter the order more than 30 days after it had been entered. The supreme court held that trial courts lacked the authority to excuse compliance with the supreme court rules governing the time for filing a notice of appeal. *Fiat-Allis, Inc.*, 158 Ill. 2d at 150, 632 N.E.2d at 1012.

The supreme court has stated clearly that the parties bear the responsibility to monitor the status of a case and that this responsibility is not lessened where the circuit clerk fails to give notice of the entry of the order. *Fiat-Allis, Inc.*, 158 Ill. 2d at 151, 632 N.E.2d at 1013; *Granite City Lodge No. 272, Loyal Order of the Moose*, 141 Ill. 2d at 127, 565 N.E.2d at 931. Actual notice is not required so long as the order appealed from was expressed publicly, in words, at the situs of the proceeding. *Fiat-Allis, Inc.*, 158 Ill. 2d at 148, 632 N.E.2d at 1012; *Granite City Lodge No. 272, Loyal Order of the Moose*, 141 Ill. 2d at 123, 565 N.E.2d at 929.

The facts in the case at bar are similar to those in *Fiat-Allis, Inc.* Here, a typewritten order granting class certification was entered into the court file on September 2, 2005, and its entry was noted in the computerized docket sheet. The defendants indicated that they first learned of the order on January 11, 2006, months after the time for filing a petition for leave to appeal had passed. They filed a motion to vacate or amend the certification order *nunc pro tunc* on January 25, 2006. On January 30, 2006, the trial court entered an order vacating *nunc pro tunc* the order entered September 2, 2005, and amended it to be entered January 11,

15

2006. In our view, the decision in *Fiat-Allis, Inc.* controls this issue. Thus, the trial court lacked the authority to vacate and reenter the same order more than 30 days after it had been originally entered in order to excuse compliance with the filing requirements of Rule 306.

The defendants have also asserted that Twentieth Judicial Circuit Rule 2.06 requires the circuit clerk to serve copies of orders to the attorneys of record, that they relied on the circuit clerk to comply with the rule, and that they were prejudiced by the circuit clerk's failure to comply. Local rule 2.06 directs the circuit clerk to serve on all the parties of record, by personal service or by mail, a copy of an order within three days of its entry and to note in the court file compliance with the rule. 20th Judicial Cir. Ct. R. 2.06 (eff. December 12, 1991). Under Supreme Court Rule 21(a) (134 Ill. 2d R. 21(a)), the circuit court is authorized to adopt rules for the orderly disposition of its business. However, local rules may not be construed to modify, limit, abrogate, or otherwise conflict with the Illinois Supreme Court rules and the existing laws of Illinois. See 134 Ill. 2d R. 21(a); *People v. Schroeder*, 102 Ill. App. 3d 133, 137, 429 N.E.2d 573, 577 (1981). We conclude that the circuit court had no authority to toll or to extend the time for filing a Rule 306 appeal in order to remedy the circuit clerk's failure to comply with a local administrative rule.

Furthermore, the record belies the defendants' assertions that they detrimentally relied on local rule 2.01 and that they were prejudiced by the circuit clerk's noncompliance with the rule. In the pleadings and affidavits filed in the trial court, the defendants detailed the efforts they had made to monitor the status of the class certification motion. The defendants' attorneys stated that they assigned paralegals or other staff members to monitor the court file once the court took the class certification motion under advisement. In addition, the defendants' attorneys appeared in open court on September 27, 2005, prior to the running of the 30-day time limit, to argue their summary judgment motion. The record shows that the defendants had ample opportunities to inspect the court file and to ascertain whether an order

16

had been entered on the class certification motion. We find it remarkable and inexplicable that the attorneys did not inquire about the status of the class certification motion when they appeared before the court on September 27, 2005. The steps taken by the defendants to monitor the court file undermine their claims of reliance on the local rule to their detriment.

The defendants claimed that the circuit court has the authority to vacate or amend and to reenter an order to avoid prejudice to the parties. In support of that contention, they cited *Comdisco, Inc. v. Dun & Bradstreet Corp.*, 306 Ill. App. 3d 197, 713 N.E.2d 698 (1999), and *Graves v. Pontiac Firefighters' Pension Board*, 281 Ill. App. 3d 508, 667 N.E.2d 136 (1996). In *Graves v. Pontiac Firefighters' Pension Board*, the trial court entered an order at the close of the evidence, stating that the case was being taken under advisement and that the court would rule by mail. Subsequently, the trial court ruled on the motion, but through an oversight it did not send copies to the parties. When the oversight was brought to the court's attention, it entered a new order acknowledging its oversight and providing that the earlier order would be final for purposes of appeal as of the date that the new order was mailed. An appeal was taken within 30 days of the new order. In considering whether the appeal had been timely filed for purposes of jurisdiction, our colleagues in the Fourth District held that because the trial court had expressly stated that it would rule by mail, the initial order did not comport with the provisions of the court's pronouncements and it did not become final until mailed by the circuit court. *Graves*, 281 Ill. App. 3d at 516, 667 N.E.2d at 141.

The facts and circumstances in *Comdisco, Inc.* are similar to those in *Graves* in that the trial court noted that the appellant relied on the trial court's standard operating procedure of mailing a copy of the final judgment to the parties and that the court had failed to mail the judgment in that case. *Comdisco, Inc.*, 306 Ill. App. 3d at 202, 713 N.E.2d at 700. The case before us is distinguishable from the aforementioned cases on its facts. Here, the trial court did not expressly provide that it would rule by mail, and there is no evidence of a standard

17

operating procedure. As previously noted, the detailed accounts of the actions taken by the defendants to monitor the status of the certification motion belie the claims of detrimental reliance.

As we reviewed this issue, we found it noteworthy that the Fourth District has declined to extend the *Comdisco, Inc.* decision to a case where the trial judge did not find that the plaintiff's failure to timely file his notice of appeal had been the direct result of the court's not following its usual practice of mailing copies of its docket entries to the parties. *Pappas v. Waldron*, 323 Ill. App. 3d 330, 336, 751 N.E.2d 1276, 1280-81 (2001). The Fourth District also recently questioned whether its decision in *Graves* is consistent with the supreme court rules and *Fiat-Allis, Inc. Berg v. White*, 357 Ill. App. 3d 496, 501, 828 N.E.2d 889, 893 (2005). The few decisions in which a court has employed equitable principles to cure the mistakes of ministerial officers are limited to the specific facts and circumstances presented in those cases. The case at bar is not analogous to those cases.

Although the issue was not raised by the parties, we have also considered the propriety of the "*nunc pro tunc*" order. The purpose of a *nunc pro tunc* order is to correct the record of a judgment, to correct a clerical error or a matter of form so that the record conforms to the judgment actually rendered by the court. *Beck v. Stepp*, 144 Ill. 2d 232, 238-39, 579 N.E.2d 824, 827-28 (1991); *In re Marriage of Breslow*, 306 Ill. App. 3d 41, 53, 713 N.E.2d 642, 651 (1999). In this case, the judge specifically stated that he would enter a *nunc pro tunc* order "if that in some way can protect [the defendants'] right to appeal this thing if that's the right thing to do." The *nunc pro tunc* order was not issued to conform the order to the ruling actually rendered on September 2, 2005. It was not issued to amend an errant provision in the September 2, 2005, order. Its only purpose was to restart the 30-day appeals clock.

The situation faced by the trial court is similar to that which confronted the trial court

18

in *Fiat-Allis, Inc.* In that case, the Illinois Supreme Court recognized that the circuit court's attempt to assist counsel was understandable and well-intentioned, but the court concluded that it was errant just the same. *Fiat-Allis, Inc.*, 158 Ill. 2d at 150, 632 N.E.2d at 1012. The supreme court stated, "Attorneys are not excused from following the filing requirements [of the supreme court rules] merely because a judge has recommended a procedural route that lies beyond the judge's authority to travel." *Fiat-Allis, Inc.*, 158 Ill. 2d at 150, 632 N.E.2d at 1013.

In our view, *Fiat-Allis, Inc.* controls the present case. Each party had a responsibility to closely and adequately monitor the progress of its case and the court's rulings in order to ensure that the much-anticipated petition for leave to file the interlocutory appeal was timely filed. That was not accomplished here. The circuit clerk's failure to mail copies of the order of September 2, 2005, to the parties does not excuse the untimely filing of the petition for leave to appeal. The *nunc pro tunc* order was not a valid means by which the circuit court could reenter the exact same order and thereby start a new 30-day period in which to file an interlocutory appeal.

The record clearly shows that the order granting the class certification was a part of the court file and available for public inspection. It was also noted in the docket entries. There is no provision for extending the time for filing a petition for interlocutory appeal other than by permission of the reviewing court pursuant to Rule 306(f), and that was not done here. The time for filing the petition for leave to appeal is jurisdictional, and the failure to meet it or to secure a timely extension of time from the appellate court will result in the dismissal of the appeal. Accordingly, we find that the defendants' Rule 306(a)(8) petition for leave to appeal the class certification was untimely filed and that the appeal must be dismissed for a lack of jurisdiction.

IV. Summary and Conclusion

19

The Rule 306(a)(8) appeal of the class certification order is hereby dismissed for a lack of jurisdiction. We have answered certified questions I and III in the affirmative. We have determined that certified question II is not a proper question under Supreme Court Rule 308, and therefore we declined to address it. We remand the case to the trial court for further proceedings.

Rule 306(a)(8) appeal dismissed; certified questions answered in part; cause remanded.

CHAPMAN, J., concurs.

JUSTICE WELCH, dissenting:

I respectfully dissent. I would decline to address the questions as identified by the circuit court pursuant to Supreme Court Rule 308(a) (155 Ill. 2d R. 308(a)), finding them to be inapposite, and consider the propriety of the order that gave rise to this appeal. In doing so, I would find that the circuit court erred in denying the defendants' motion for a summary judgment and would reverse that order, granting a judgment in favor of the defendants. Accordingly, I would find it unnecessary to address the issues pertaining to class certification.

I present my own overview of the complaint and its allegations, as well as the defendants' motion for a summary judgment, because I feel it is necessary for a full understanding of my position. This is a class action seeking money damages for the purchase price paid by the plaintiff for Baycol. According to the first amended complaint, the plaintiff was prescribed, purchased, and used Baycol, a drug manufactured, marketed, promoted, and sold by the defendants. The action is brought on behalf of all the individuals who have

20

purchased Baycol but excludes any of those individuals who have or had an action for damages for personal injuries or death suffered as a result of using Baycol. Counts I and III of the first amended complaint are brought pursuant to the Consumer Fraud and Deceptive Business Practices Act (the Act) (815 ILCS 505/1 *et seq.* (West 2004)), and count II alleges common law civil conspiracy to commit fraud.

The complaint alleges that the defendants knowingly, intentionally, and/or recklessly concealed from government regulators, the medical community, and consumers known risks and dangers associated with the use of Baycol, while at the same time exaggerating its efficacy, with the intent to cause consumers to purchase Baycol. It alleges that the defendants knew of serious risks and dangers associated with the use of Baycol and knowingly and intentionally omitted from their promotional material and advertisements these known risks and dangers. It alleges that in deciding whether to prescribe, recommend, and purchase Baycol, the medical community, health care insurers, and consumers, including the plaintiff, reasonably relied on these promotional materials and advertisements, which omitted and concealed the known risks and dangers of Baycol. The complaint alleges that had consumers and physicians, including the plaintiff and/or her physician, known of these risks and dangers, they would not have prescribed or purchased Baycol.

Count I alleges that the mere act of offering Baycol for sale as a consumer product is a representation that the product is reasonably safe for its intended purpose and that the defendants knowingly and intentionally concealed the known risks and dangers of Baycol with the intent that the plaintiff purchase Baycol. The complaint alleges that the plaintiff was actually deceived and suffered actual damages in that she spent money to purchase the drug which she would not have spent had she known of the risks and dangers associated therewith. It alleges that by their actions, the defendants committed consumer fraud within the meaning of the Act. Count I seeks damages in the amount of the purchase price of the drug.

21

Count III alleges that by virtue of the concealment of the risks and dangers associated with Baycol, the defendants were able to charge prices that were far in excess of the fair market value which Baycol would have had but for the concealment and that the defendants knew that the prices charged for Baycol far exceeded its fair market value. The complaint alleges that in so acting, the defendants committed one or more unfair acts or practices within the meaning of the Act. Count III seeks damages "in an amount equal to the difference between the price charged for Baycol and the fair market value which Baycol would have had but for [the defendants'] omissions, suppressions, and/or concealments."

Count II alleges common law civil conspiracy based on the above violations of the Act.

The defendants filed a motion for a summary judgment based primarily on the deposition testimony of the plaintiff that prior to purchasing Baycol she had not seen, read, or heard anything about the product and that she had relied solely on her physician's judgment and not on any representation or misrepresentation of the defendants in purchasing the product. The defendants' motion concluded that, accordingly, the plaintiff was not, and could not have been, actually deceived by any representation, misrepresentation, or concealment by the defendants and that any such deception could not have been the proximate cause of the plaintiff's damages. Additionally, with respect to count III, the defendants argued that the plaintiff's theory of damages, which the defendants call a "market theory" of damages, has been rejected by the Illinois Supreme Court. Finally, with respect to count II, the defendants argued that they are entitled to a summary judgment because civil conspiracy is not an independent tort but must be premised on the commission of an underlying independent wrong, in this case a violation of the Act.

The plaintiff responded that, even if the plaintiff had not seen or heard any promotional materials or advertisements for Baycol, the mere act of offering the product for

22

sale is a representation to the plaintiff that it is safe for its intended use, that the defendants knew that this was not true and concealed the true risks and dangers of Baycol, and that the plaintiff relied on the defendants' concealment in purchasing the product. The plaintiff concluded that, accordingly, the plaintiff was actually deceived and that this actual deception was the proximate cause of her damages. Furthermore, the plaintiff argued that proximate causation is established based on the concealment from medical providers of the true risks and dangers of Baycol, which concealment was intended to, and did, reach the plaintiff. Thus, the plaintiff argued, she was indirectly deceived by the defendants' conduct.

Preliminarily, I would decline to address the questions as identified by the circuit court pursuant to Supreme Court Rule 308(a) (155 Ill. 2d R. 308(a)), finding them to be inapposite. When in its discretion this court allows an appeal under Rule 308, it is not limited to answering the questions that the trial court has identified. *First of America Bank-Illinois, N.A. v. Drum*, 295 Ill. App. 3d 205, 211 (1998). Instead, this court may, pursuant to Supreme Court Rule 366(a)(5) (155 Ill. 2d R. 366(a)(5)), enter any judgment and make any order that ought to have been given or made, and it can make any other and further orders and grant any relief that the case may require. *Drum*, 295 Ill. App. 3d at 211; see also *Schrock v. Shoemaker*, 159 Ill. 2d 533, 537 (1994). The purpose of an appeal pursuant to Supreme Court Rule 308(a) is to "materially advance the ultimate termination of the litigation." 155 Ill. 2d R. 308(a). In this particular case, I do not believe that answering the questions certified by the circuit court will serve to materially advance the ultimate termination of this litigation. Instead, I believe that the interests of judicial economy and the need to reach an equitable result oblige this court to go beyond the questions of law presented and consider the propriety of the order that gave rise to the appeal. See *Bright v. Dicke*, 166 Ill. 2d 204, 208 (1995). In any event, even if I were to answer the certified questions, given the facts as presented by this case, I would answer them in the negative for the reasons which follow and,

23

because the questions are controlling, conclude that the circuit court erred in denying the defendants' motion for a summary judgment.

A summary judgment is proper where the pleadings, affidavits, depositions, admissions, and exhibits on file, when viewed in the light most favorable to the nonmovant, reveal that there is no genuine issue regarding any material fact and that the movant is entitled to a judgment as a matter of law. *Zekman v. Direct American Marketers, Inc.*, 182 Ill. 2d 359, 374 (1998). This court's review of an order denying a summary judgment is *de novo*. *Zekman*, 182 Ill. 2d at 374.

A summary judgment in favor of a defendant is proper when a plaintiff cannot establish an essential element of her cause of action. *Volpe v. IKO Industries, Ltd.*, 327 Ill. App. 3d 567, 577-78 (2002). Although the plaintiff need not prove her case at the summary judgment stage, she must come forward with evidence that establishes a genuine issue of material fact. *Wasik v. Allstate Insurance Co.*, 351 Ill. App. 3d 260, 264 (2004).

Section 10a(a) of the Act (815 ILCS 505/10a(a) (West 2004)) expressly authorizes private causes of action for violations of the Act. It provides, "Any person who suffers actual damage as a result of a violation of [the] Act committed by any other person may bring an action against such person." 815 ILCS 505/10a(a) (West 2004). It is now well-settled that this section requires proof both that "actual damage" had been incurred and that the damage was proximately caused by the violation of the Act. See *Oliveira v. Amoco Oil Co.*, 201 Ill. 2d 134, 149 (2002); *Barbara's Sales, Inc. v. Intel Corp.*, 227 Ill. 2d 45, 72 (2007). A summary judgment for the defendants was proper in the case at bar because the plaintiff cannot establish these essential elements of her cause of action.

I begin with count I and the element of proximate cause. A successful claim by a private individual suing under section 10a of the Act (815 ILCS 5/10a(a) (West 2004)) must demonstrate that the fraud complained of proximately caused the plaintiff's injury. *Zekman*

24

*v. Direct American Marketers, Inc.*, 182 Ill. 2d 359, 373 (1998).

In *Zekman*, a case remarkably similar to the case at bar, the plaintiff filed a class action against AT&T and alleged violations of the Act, after he had received a series of mailings from Direct American Marketers, Inc., indicating that he had won a prize. While it was possible to respond by mail, the mailings urged the recipient to telephone a "900" number to claim the prize. Of course, by calling the "900" number the recipient incurred charges. These charges, as well as the option to respond by mail, were stated in the mailings, although in less conspicuous type. The plaintiff made numerous such calls to "900" numbers but won only nominal prizes of discount coupons. AT&T billed the plaintiff for the telephone charges and retained a percentage of the charge for itself; the majority of the charge went to the direct marketer.

In his deposition, the plaintiff admitted that he knew prior to placing the "900" calls both that he could have responded by mail and that he would be charged for the calls. Upon placing the calls, the plaintiff was further informed that he would be charged and could hang up immediately without being charged. The plaintiff made at least 24 such telephone calls. The plaintiff's complaint alleged that AT&T obtained money by means of a deceptive practice under the Act.

In its motion for a summary judgment, AT&T argued that the plaintiff's deposition testimony demonstrated that the plaintiff had not been actually deceived by the mailings or the telephone bills and that the plaintiff therefore could not establish that any of AT&T's alleged misconduct had caused him injury. AT&T argued that the plaintiff's deposition testimony established that the conduct complained of was not the proximate cause of any harm, as the Act requires.

In affirming the summary judgment for AT&T, the supreme court pointed out that section 10a(a) of the Act, which governs private causes of action under the Act, mandates

25

that an individual's damages be " 'a result of a violation of [the] Act.' " *Zekman*, 182 Ill. 2d at 373 (quoting 815 ILCS 5/10a(a) (West 1992)). Thus, the Act requires that a successful claim by a private individual suing under the Act demonstrate that the fraud complained of proximately caused the plaintiff's injury. *Zekman*, 182 Ill. 2d at 373. Because the plaintiff's deposition testimony established that he had not been actually deceived by AT&T's conduct and that the conduct complained of was not the proximate cause of his injury, AT&T was entitled to a summary judgment on the claim. Based on the plaintiff's deposition testimony, there was no genuine issue of material fact regarding whether the allegedly deceptive nature of the mailings received by the plaintiff caused him to incur the charges for the "900" number calls. *Zekman*, 182 Ill. 2d at 375. Rather, it appeared that the plaintiff understood the requirements and costs of the program. *Zekman*, 182 Ill. 2d at 375. Based on the testimony by the plaintiff at his deposition, there was no genuine issue of material fact regarding whether the alleged violations of the Act by AT&T proximately caused the plaintiff's damage, for the plaintiff's testimony demonstrated that he had not been deceived by AT&T's actions. *Zekman*, 182 Ill. 2d at 376.

Similarly, the plaintiff's deposition testimony in the case at bar establishes that the conduct complained of was not the proximate cause of her injury. The plaintiff's deposition testimony precludes her from establishing that the alleged misconduct of the defendants proximately caused her damages. The plaintiff testified unequivocally in a deposition that in purchasing Baycol she relied exclusively on her physician's advice and that prior to purchasing it she had never heard, read, or seen anything about the product and knew nothing about it. She had never heard, read, or seen any information regarding the effectiveness of Baycol or the presence or absence of any risks or dangers associated with the medication. She was not deceived by the defendants.

In *Barbara's Sales, Inc.*, 227 Ill. 2d at 76, the supreme court held that certain

statements made by the defendant/seller were not actionable because no plaintiff was aware of the statements. The court pointed out that under *Oliveira v. Amoco Oil Co.*, 201 Ill. 2d 134 (2002), and its progeny (*Avery v. State Farm Mutual Automobile Insurance Co.*, 216 Ill. 2d 100 (2005); *Shannon v. Boise Cascade Corp.*, 208 Ill. 2d 517 (2004); *Zekman v. Direct American Marketers, Inc.*, 182 Ill. 2d 359 (1998)), plaintiffs must prove that each and every consumer who seeks redress actually saw and was deceived by the statements in question.

Based on the testimony of the plaintiff at her deposition, I do not believe that there remains a genuine issue of material fact regarding whether the alleged violations of the Act by the defendants proximately caused her damage, for the plaintiff's testimony demonstrates that she was not deceived by the defendants' actions.

Nevertheless, count I of the plaintiff's complaint alleges that regardless of whether she ever saw, heard, or read any promotional materials or advertisements about Baycol, the defendants' mere act of selling the drug constitutes a representation that it is safe for its intended purpose and that the plaintiff relied on this false representation in purchasing Baycol. I point out initially that the allegation that the mere act of selling the drug constitutes a representation that it is safe for its intended purpose is a legal conclusion and not an allegation of fact. Accordingly, it need not be accepted as true. *Kubik v. CNA Financial Corp.*, 96 Ill. App. 3d 715, 719 (1981). In any event, most, if not all, prescription medications carry some risks and dangers. This is why they are available by prescription only. The mere act of selling a prescription medication is not a representation that it is safe for its intended use. Indeed, it may not be safe, but its risks and dangers may be outweighed by the risks and dangers of the medical condition that it is prescribed to treat. The plaintiff simply cannot establish that she was actually deceived by the defendants' conduct and that this deception was the proximate cause of her damages. Accordingly, I believe that the circuit court erred in denying the defendants' motion for a summary judgment on count I.

27

The defendants are entitled to a summary judgment on count I of the plaintiff's complaint for yet another reason: the plaintiff cannot establish that she suffered "actual damage" as a result of her purchase of Baycol. In order to recover under the Act, a plaintiff must establish that she suffered "*actual damage* as a result of a violation of [the] Act." (Emphasis added.) 815 ILCS 505/10a(a) (West 2004); *Oliveira*, 201 Ill. 2d at 149.

In *Avery v. State Farm Mutual Automobile Insurance Co.*, 216 Ill. 2d 100 (2005), a plaintiff's cause of action under the Act failed in part because he was unable to prove actual damage. That case involved a claim that the defendant had violated the Act by failing to disclose its policy of substituting nonoriginal equipment manufacturer parts for original manufacturer parts when repairing insured vehicles. The supreme court held that the claim of the named plaintiff DeFrank must fail because he failed to allege or prove actual damages. DeFrank testified that, after repairs had been made under his insurance contract with State Farm Mutual Automobile Insurance Company in which nonoriginal equipment manufacturer parts were used, he sold his vehicle in an arm's-length transaction for what was admittedly the same price he would have received had the vehicle had original equipment manufacturer parts on it. It had made no difference in the value of the vehicle that nonoriginal equipment manufacturer parts had been used in the repair. Accordingly, the plaintiff DeFrank had not suffered actual damage and could not prevail on his claim under the Act.

Similarly, in the case at bar the plaintiff cannot establish that she suffered actual damage as a result of her purchase of Baycol, even if that purchase was in reliance on deceptive conduct by the defendants. The plaintiff purchased and paid for a cholesterol-lowering drug. The complaint does not allege that the plaintiff suffered any personal injury as a result of using the drug, nor does she allege that the drug did not work to lower her cholesterol. If, in fact, the drug lowered the plaintiff's cholesterol without causing any adverse side effects or personal injuries, then the plaintiff got exactly what she paid for: an

28

effective, safe, cholesterol-lowering drug. I note that the plaintiff has asserted her physician/patient privilege (735 ILCS 5/8-802 (West 2004)) with respect to her own medical records. Accordingly, she is unable to prove the essential element of actual damage as a result of her purchase of Baycol, and the defendants were entitled to a summary judgment on count I of the plaintiff's complaint.

I believe that the defendants were also entitled to a summary judgment on count III of the plaintiff's complaint, which also alleged a violation of the Act. Dispositive on this count is the supreme court's decision in *Oliveira v. Amoco Oil Co.*, 201 Ill. 2d 134, 140 (2002). As is *Zekman v Direct American Marketers, Inc.*, 182 Ill. 2d 359 (1998), *Oliveira* is remarkably similar to the case at bar. In *Oliveira*, the named plaintiff in a class action against Amoco Oil Company (Amoco) complained that Amoco had falsely advertised its premium gasoline as superior to other grades of gasoline, thereby violating the Act. The plaintiff alleged in his complaint that the false advertisements proximately caused him actual damage. The complaint did not allege, however, that the advertisements induced the plaintiff to buy the gasoline or that he was deceived by the ads, nor did it allege that the plaintiff had seen, heard, or read any of the allegedly deceptive advertisements. Instead, the plaintiff alleged that he was damaged because the ads created an artificially inflated price for the gasoline that he purchased. The complaint alleged that these false advertisements increased consumer demand for premium gasoline, allowing Amoco to charge an inflated price, thereby causing actual damage to all the purchasers of the gasoline, regardless of whether they were aware of the ads at the time of purchase. The plaintiff advanced what the supreme court referred to as a "market theory" of causation: the deceptive ads increased demand, which drove up the price; all the purchasers of the premium gasoline paid an increased price because of the allegedly deceptive ads, regardless of whether they had seen or relied upon the advertisement at issue. As in the case at bar, the remedy sought was the difference

between the artificially inflated price and the price that would have been paid absent the deception.

In rejecting the plaintiff's theory of causation, the Illinois Supreme Court reaffirmed that in order to prevail on a claim brought under section 10a(a) of the Act, a private individual must plead and prove actual damage proximately caused by the deception. *Oliveira*, 201 Ill. 2d at 149. The court concluded that its decision in *Zekman* controlled. In *Zekman*, the plaintiff's claim failed as a matter of law because he was not actually deceived. *Oliveira*, 201 Ill. 2d at 154. Similarly, in *Oliveira*, the supreme court found that the plaintiff's complaint failed to allege that he was in any manner actually deceived by Amoco's advertisements:

"Plaintiff does not allege that he was, in any manner, deceived by defendant's advertisements. Plaintiff does not allege that he received anything other than what he expected to receive when he purchased defendant's gasoline, *i.e.*, a certain amount of gasoline, with a certain octane level, for the price listed on the pump. Indeed, plaintiff could not allege that defendant's advertisements deceived him or misled him as to what he was receiving when he made his purchase. Because plaintiff does not allege that he saw, heard[,] or read any of defendant's ads, plaintiff cannot allege that he believed that he was buying gasoline which benefitted the environment or improved engine performance." *Oliveira*, 201 Ill. 2d at 154-55.

Similarly, in the case at bar the plaintiff cannot establish that she was, in any manner, deceived by the defendants' conduct. Nor can she establish that she received anything other than what she expected to receive when she purchased the defendants' medication, a medication which was prescribed by her physician and which might very well have effectively worked to lower the plaintiff's cholesterol. The plaintiff admitted that she never saw, heard, or read any information about Baycol prior to purchasing it and that she relied

30

entirely on the advice of her physician in purchasing it. Accordingly, the plaintiff cannot establish that she suffered actual damage proximately caused by the defendants' alleged deception.

The supreme court again rejected the viability of a "market theory" of causation in *Barbara's Sales, Inc.*, 227 Ill. 2d at 76.

A similar decision was reached in *Shannon v. Boise Cascade Corp.*, 208 Ill. 2d 517 (2004). In that case the plaintiffs filed a class action under the Act against the manufacturer of composite siding and alleged that it had deceptively advertised its product. Admissions in all the plaintiffs' depositions established that none had received any representations regarding the product from the defendant. The complaint did not allege that any named builder, architect, or engineer had received any product literature or that any plaintiff communicated with any builder, architect, or engineer who had received product literature. The complaint set forth a "market theory" of causation similar to that put forth in *Oliveira*. The circuit court granted the defendant a summary judgment on the basis that the plaintiffs had not been aware of the defendant's advertising and that the claimed damages were not proximately caused by the alleged deceptive advertising.

On appeal, the supreme court affirmed the summary judgment in favor of the defendant. The plaintiffs' complaint did not allege that any deceptive advertising had been received by any plaintiff or by any builder, architect, engineer, or other like person somehow connected with a plaintiff. *Shannon*, 208 Ill. 2d at 525. The plaintiffs' market theory of causation had been rejected in *Oliveira* and was similarly rejected here. The advertising had not deceived the plaintiffs and, thus, could not have proximately caused the claimed damages. *Shannon*, 208 Ill. 2d at 525.

Of particular relevance to the case at bar is the supreme court's statement in *Shannon*, 208 Ill. 2d at 525-26, that although proof of actual deception of a plaintiff is required, that

31

is not to say that the deception must always be direct between the defendant and the plaintiff to satisfy the requirement of proximate cause under the Act. The court stated that if the product literature had in fact deceived a particular builder, architect, or contractor, resulting in the installation of defective siding on a home, the damage could arguably have occurred as a result of the indirect deception, as required by the Act. In those circumstances, the purchaser, who might have no independent knowledge of the qualities or expected performance standards of siding, is deceived because of the deception of the builder, architect, or contractor, who reasonably should have had correct knowledge. However, in *Shannon*, the plaintiffs had not pled any facts to support that theory.

Similarly, in the case at bar, the plaintiff has not pled sufficient facts to support a theory that her own physician, who prescribed Baycol for her, had seen, read, or heard any promotional material or advertisements or received any product literature from the defendants and in fact been deceived. Instead, the complaint makes general allegations that the defendants advertised Baycol in publications which physicians commonly read and that those advertisements were misleading or false. The complaint does not allege that the plaintiff's physician received any of those publications, saw the false or misleading advertisements, and was deceived thereby, nor did the plaintiff present any evidence to support this theory in opposition to the motion for a summary judgment. Indeed, it is possible that the plaintiff's physician knew of the risks and dangers associated with the use of Baycol but determined that the risks and dangers associated with the plaintiff's elevated cholesterol outweighed the risks and dangers associated with the drug. Accordingly, the plaintiff can rely on this theory no more than could the plaintiffs in *Shannon*. I believe that the circuit court erred in denying the defendants' motion for a summary judgment on count III.

Finally, count II sounds in common law civil conspiracy, which is not an independent

32

tort but rises or falls with the plaintiff's claims under the Act. See *Indeck North American Power Fund, L.P. v. Norweb PLC*, 316 Ill. App. 3d 416, 432 (2000). Accordingly, a judgment in the defendants' favor on counts I and III must also result in a judgment in the defendants' favor on count II.

Having concluded that the trial court erred in denying the defendants' motion for a summary judgment and having concluded that the court's order must be reversed, I would have found it unnecessary to address the issues relating to the class certification.

NO. 5-06-0077

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| TERESA DE BOUSE, Individually and On Behalf of Others Similarly Situated, | ) ) ) | Appeal from the Circuit Court of St. Clair County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 04-L-53 |
| BAYER AG, BAYER CORPORATION, SMITHKLINE BEECHAM CORPORATION, d/b/a GLAXOSMITHKLINE, GLAXOSMITHKLINE PLC, MARCY GRIM, MICHAEL HARVEY DAVIDSON, M.D., and MICHAEL LEVER, | ) ) ) ) ) ) ) | |
| | ) ) | Honorable Michael J. O'Malley, |
| Defendants-Appellants. | ) | Judge, presiding. |

_____

**Opinion Filed**:        October 9, 2008

_____

**Justices**:      Honorable James K. Donovan, J.

               Honorable Melissa A. Chapman, J.,
               Concurs

               Honorable Thomas M. Welch, J.,
               Dissents

_____

**Attorneys for Appellants**      Katherine M. Fowler, Terry Lueckenhoff, One S. Memorial Drive, 12th Floor, St. Louis, MO 63101; Stephen C. Carlson, J. Randal Wexler, Charles K. Schafer, Sidley Austin LLP, One South Dearborn Street, Chicago, IL 60603; Andrew Goldman, Phillip Beck, Bartlit Beck Herman Palenchar & Scott, 54 West Hubbard, Suite 300, Chicago, IL 60610 (attorneys for Bayer AG, Bayer Corp., Marcy Grim, Michael Lever)

               John E. Galvin, Jonathan H. Garside, Fox Galvin, LLC, One Memorial Drive, Eighth Floor, St. Louis, MO 63102 (attorneys for SmithKline Beecham Corp., d/b/a GlaxoSmithKline, GlaxoSmithKline PLC)

_____

**Attorneys for Appellee**      John J. Driscoll, Brown & Crouppen, P.C., 720 Olive Street, Suite 1800, St. Louis, MO 63101; Christopher Cueto, Law Office of Christopher Cueto, P.C., 7110 West Main Street, Belleville, IL 62223

_____